HILDA PETTY *v.* HAROLD G. PETTY

5-5948                                         482 S. W. 2d 119

Opinion delivered July 10, 1972

*William C. Gilliam,* for appellant.

*Lawson E. Glover* and *David M. Glover,* for appellee.

CARLETON HARRIS, Chief Justice. Appellant, Hilda Petty, and appellee, Harold G. Petty, were divorced in March 1969, and Mrs. Petty was granted custody of the two minor children, Mr. Petty being ordered to pay child support in the amount of $120.00 per month. On July 24, 1971, the older child, Kay, became 18 years of age and in August 1971, Mr. Petty cut the support payments in half to $60.00 per month. Thereafter, Mrs. Petty filed a petition setting out that Kay had grand mal epilepsy, a disease with which she had been afflicted since two years of age. It was further asserted that Kay could not drive a car, was unable to hold a job, was then enrolled in college, and was in dire need of support from her father, and it was prayed that Mr. Petty be ordered to show cause why he had arbitrarily reduced the monthly support; the court was further requested to define appellee's duty of support for the future. On hearing, the court held:

> "That the original Decree of Divorce ordered Defendant to pay child support in the amount of $120.00 per month for the two children born to this marriage; that the oldest child, Kay Allison Petty became 18 years of age on July 24, 1971; that because she has reached the age of 18 years, and not disabled, Defendant is relieved from paying support for her and the child support payable by him should be reduced from $120.00 per month to $60.00 per month."

From the order so entered, appellant brings this appeal. For reversal, it is asserted that Mr. Petty's duty to support Kay did not terminate when Kay reached the age of 18 as a matter of law, and that his duty to support should be extended beyond her minority because she is handicapped and disabled.

As described by Mrs. Petty, Kay takes medication

consisting of a grain and one-half of Dilantin, both in the morning and afternoon and a grain of Phenobarbital twice a day, and has been taking this medication since she was two years of age. The mother stated that, without the medication, Kay suffers convulsions. It appears that she occasionally loses control of members of her body. This daughter is a student at Henderson State College, the Rehabilitation Center paying her tuition because of her epilepsy. The mother outlined that Kay is required to pay $5.50 a week transportation, and is required to pay for her meals. Mrs. Petty testified that her daughter was unable to drive a car, and had had accidents, on one occasions getting the car out of gear and crashing through the garage door. She lives with her mother who supervises the medication. According to the evidence, Kay is in need of specialized training in order to obtain employment, and the daughter is majoring in pre-nursing at Henderson. Objection to the offer of a medical statement by appellant relating to Kay's condition from Dr. McFarland of Hot Springs was sustained. The record reflects that Mrs. Petty has "take home" pay of $77.00 per week.

Mr. Petty who has "take home pay of $593.58 per month, testified that he cut the payments in half when the daughter reached 18 years of age, because "so far as I was concerned she was a grown person". He admitted that he knew about the accidents, and that she was not able to drive. He said that, according to his information, his daughter was "handicapped, not disabled". The record reveals the following on cross examination of Mr. Petty:

"Q. Can she drive? Can she work in a ——

A. There is a lot of people that can't drive.

Q. Do you feel like she can work in a factory around machinery or something?

A. No, I am not saying that but she can work.

Q. What can she do with a High School Education? Don't you feel she needs to go to college?

A. I am not saying she don't need to go.

Q. Don't you feel she needs to go?

A. She probably does.

Q. She probably needs to go even more than a normal child?

A. Well, I think everyone needs to go.

Q. Don't you think she needs to go more than a normal child would because she needs some kind of education where she can work some type of job other than factory job?

A. She needs education but she is not required to have a special education and she is not required by the Rehab to have a special education.

It appears that the chancellor denied relief because he did not consider Kay disabled, since he made the finding that she was not disabled, but we feel that the learned chancellor was in error. While, as set out in Ark. Stat. Ann. § 57-103 (Repl. 1971), generally speaking, females of the age of 18 are considered at full age for all purposes, we have held that it is the duty of the father to contribute to the support of his children, even after they have reached their majority, if the circumstances are such as to make it necessary. *Upchurch* v. *Upchurch,* 196 Ark. 324, 117 S.W. 2d 339; see also *Jerry* v. *Jerry,* 235 Ark. 589, 361 S.W. 2d 92.

Webster's Third New International Dictionary defines "disabled" as *inter alia,* "incapacitated by or as if by illness, injury or wounds: Crippled". The word "handicapped" is defined *inter alia,* "A disadvantage that makes achievement unusually difficult. A physical disability that limits the capacity to work". It is at once apparent that there is a similarity in these definitions, though the word "disabled" denotes a greater inability to function in a normal manner, but there is nothing in our cases indicating that a disabled person is entitled, after be-

coming an adult, to continued financial aid from the father, while one who is only handicapped, is not entitled to such aid. It would appear that a determination of whether continued support is proper would have to be made on the basis of facts of a particular case.

Here, we very quickly reach the conclusion that the mother's position is meritorious, and relief should be granted. That the daughter is unable to earn a livelihood at the present time is, we think, established, and we also agree with appellant's argument that Kay, if she is to maintain herself in the future, is in more need of a specialized education than a normal student. The State has recognized this fact and pays for tuition, but obviously there are other expenditures, such as food and clothing. The evidence reflects that Mrs. Petty has "take home" pay of between $300.00 and $325.00 per month, and Mr. Petty has "take home" pay of $593.58 per month. Is there any valid reason why the mother alone should bear the financial responsibility of helping the daughter? Under the circumstances set out, is there any less duty on the father because he lives apart from the daughter? To ask these questions is but to answer then for each parent is responsible for bringing the child into this world and each, where financially able, has an obligation to render assistance. In the Missouri case of *State* v. *Carroll*, 309 S.W. 2d 654,[1] a case involving an adult daughter with epilepsy, the court commented:

> "A large majority of the courts of sister states, forsaking the hard rules of the common law and following the 'dictates of humanity,' enforce the exception and continue the obligation into majority if the child is physically or mentally incapable of maintaining himself."

In the Kentucky case of *Crain* v. *Mallone*, 113 S.W. 67, the court said that there was no difference in the duty imposed upon a parent to support an infant and the obligation to care for a dependant adult, stating:

[1]This was a decision by the St. Louis Court of Appeals, but it is referred to by the Missouri Supreme Court in the case of *Fower* v. *Fower*, 448 S.W. 2d 585, wherein the court states that it agrees with the conclusion reached in the *Carroll* case.

"In either case the natural as well as the legal obligation is the same, if the parent is financially able to furnish the necessary assistance."

Of course, when Kay becomes financially capable of taking care of herself, a different situation will exist, but under the present record, we hold that the court erred in granting the reduction. Accordingly, the order (decree) of the Hot Springs Chancery Court is reversed, and the cause is remanded with directions to reinstate the original order of support, i.e., $120.00 per month.

It is so ordered.

BYRD, J., dissents.