George ELKINS Jr. *v.*
Jackie Marie Short ELKINS

77-59                                    553 S.W. 2d 34

Opinion delivered July 11, 1977
(Division I)

*Warner & Smith,* by: *James M. Dunn,* for appellant.

*Robert D. Ridgeway,* for appellee.

ELSIJANE T. ROY, Justice. Appellant George Elkins, Jr., and appellee Jackie Marie Short Elkins were divorced in January, 1971. Jackie Elkins was awarded permanent care and custody of the minor son, Mark.

Mark was 18 years of age on November 17, 1975, at which time appellant stopped all support and medical payments. On February 8, 1976, appellee filed a petition for contempt against appellant, and contended at the hearing on March 3, 1976, that appellant should be ordered to pay child support for so long as Mark was in college. Appellant contended Mark was physically able to support himself and that appellant's legal obligation to pay child support terminated, at the latest, upon Mark's graduation from high school. The chancellor by order dated March 3, 1976, required appellant to continue to make child support payments and to be responsible for Mark's medical bills until his graduation from high school in June, 1976. The court retained jurisdiction to consider what further action should be taken in the event Mark was accepted in a college.

Mark was admitted into Arkansas State University at Beebe, and upon presentation of evidence to this effect the court ordered appellant to continue making child support payments in the amount of $45 each week and to continue to be responsible for medical expenses, so long as Mark is in

college and satisfactorily pursuing his course of study or until further orders of the court. From said order this appeal is brought.

Appellant contends and Mark admitted that he was physically able to drive a car, to participate in sports and that he had held summer jobs. Appellant also contends Mark does not show the attention and affection a father should receive from his son.[1] This was denied to some extent by Mark who contended his father did not reciprocate when he showed him attention.

In his testimony Mark tended to minimize his handicap, but it is undisputed Mark has dyslexia, an impairment of the ability to read due to a brain defect. The doctor described Mark's condition more particularly in a letter written in response to an inquiry made by Mark's father. The letter from Dr. John E. Peters, University of Arkansas Medical Center, contained the following information:

> * * * Mark has shown ample signs through the years of brain impairment. From the history it is probable that this was due to bleeding during the pregnancy and to prematurity and very low birth weight.
>
> As evidence of his continued brain impairment, we note his slow speech, poor performance on visual-motor coordination, poor sequential memory, and mild motor clumsiness. However, these findings are not the immediate reason for his coming to me. He came to me because of his short attention span, another characteristic of mild brain damage. For this I give him certain medications. * * *
>
> * * *

Dr. Peters also expressed the opinion that Mark should be given the opportunity to go to college, and if Mark were unable to handle college then alternative education and work

---

[1]We agree with the chancellor that both Mark and his father should make an effort to ameliorate the unfortunate partial estrangement. Both parties seemed to desire this result.

should be explored. Despite his brain impairment Mark's ambition to go to college and become a forester caused him to take make-up courses and raise his grades so that he would be accepted for college.

Appellee was willing to do all she could to help Mark, but this help was limited because her take-home pay was only $89 per week. Appellant's base pay was $230 a week, or approximately $11,960 per year.[2]

Mark had medical bills for the year of 1975 several hundred dollars in excess of Blue Cross coverage and will need psychiatric care and prescription medicine for his lifetime. Without a college education it will be very difficult for him to earn sufficient sums for his support and medical bills. Mark will also need someone to read to him while he is in college, and this will add to the expense of a college education.

Jackie Elkins testified part of Mark's school years had been in remedial classes, and she did not think Mark would be able to support himself adequately without further schooling and training. She also stated, "Mark has been an above average student considering his motor visual handicap and also dyslexia." She testified he has been under a doctor's care constantly since he was seven years of age.

Mark Elkins testified:

Q.   Son, do you have any way to go to college when you graduate from high school? Do you have any way of supporting yourself through college?

A.   No, sir, not at the present time, I don't.

Q.   Are you able or have you been able to secure a job that pays substantial wages?

A.   No, sir.

---

[2]In the two previous years appellant's income tax returns reflected income of $24,000 and $17,000, but he testified he could no longer handle overtime work which resulted in his decreased income.

Q. Do you need help from your father to secure your education?

A. Yes, sir.

Appellant's present wife, Grace Elkins, would like to see Mark receive more education, and she testified she thought "everyone should have the opportunity of attending college."[3]

Ark. Stat. Ann. § 34-1211 (Repl. 1962) provides that when a decree of divorce has been entered the court shall make such order concerning support and care of the child or children as may be reasonable.

In *Upchurch* v. *Upchurch*, 196 Ark. 324, 117 S.W. 2d 339 (1938), this Court stated: "It is, of course, the duty of the father to contribute to the support of his children even after they are of age if the circumstances are such as to make it necessary."

In *Jerry* v. *Jerry*, 235 Ark. 589, 361 S.W. 2d 92 (1962), we stated:

* * * In *Missouri Pacific Railroad Company, et al.* v. *Foreman*, 196 Ark. 636, 119 S.W. 2d 747 . . . we said: "*Ordinarily*, there is no legal obligation on the part of a parent to contribute to the maintenance and support of his children after they become of age." * * * (Italics supplied.)

The word "ordinarily" denotes the Court realized there might be circumstances which could impose on a parent the duty to support a child after such child became of age.

In *Petty* v. *Petty*, 252 Ark. 1032, 482 S.W. 2d 119 (1972), we held that where a daughter of divorced parents was afflicted with epilepsy, was unable to drive a car, and was in need of specialized training to obtain employment the fact

[3]When Mark became 18 and appellant discontinued payments, Grace Elkins, who was self-supporting, made several payments from her own funds.

that she had reached majority did not warrant reduction in support payments by the divorced father.

In *Petty* we stated:

Webster's Third New International Dictionary defines "disabled" as *inter alia,* "incapacitated by or as if by illness, injury or wounds: Crippled." The word "handicapped" is defined *inter alia,* "A disadvantage that makes achievement unusually difficult. A physical disability that limits the capacity to work." It is at once apparent that there is a similarity in these definitions, though the word "disabled" denotes a greater inability to function in a normal manner, but there is nothing in our cases indicating that a disabled person is entitled, after becoming an adult, to continued financial aid from the father while one who is only handicapped, is not entitled to such aid. * * *

The determination of whether continued support for an adult child is proper has to be made on the basis of the facts of each particular case. *Petty* v. *Petty, supra,* and *Matthews* v. *Matthews,* 245 Ark. 1, 430 S.W. 2d 864 (1968).

Although Mark Elkins's physical health may be good, it will be most difficult for Mark to provide support for himself unless he is given the opportunity to secure additional education.

We have recognized that paternal duty involves something more than support until age 18 where a handicapped child is involved. After reaching age 18 further support should be given for educational purposes to prepare the handicapped child to pay his medical bills and support himself, instead of being a drain on the welfare of society, if the financial condition of the parents allows.

Among other things, Dr. Peters noted Mark's slow speech. The chancellor had the opportunity to see and hear Mark on the witness stand; thus his assessment of Mark's speech and other reactions would be much superior to ours from the cold record. We do not reverse the chancellor unless

his findings are against the preponderance of the evidence.

In *Neal* v. *Neal*, 258 Ark. 338, 524 S.W. 2d 460 (1975), we said:

> * * * A compelling reason for this well settled rule is the fact that the chancellor is in a better position to evaluate the testimony of the witnesses *as he hears them testify* and observes their demeanor while doing so. *Dennis* v. *Dennis,* 239 Ark. 384, 389 S.W. 2d 631 (1965). (Italics supplied.)

From the evidence heretofore detailed we find the decree of the chancellor is amply supported by the preponderance of the evidence.

Affirmed.

We agree. HARRIS, C.J., and GEORGE ROSE SMITH and HOLT, JJ.

BYRD, J., dissents.

CONLEY BYRD, Justice, dissenting. From a reading of the majority opinion one could conclude that appellant is a hard-hearted and mercenary father that is more interested in his bank roll than he is the livelihood of his disabled son. However, the undisputed evidence shows that the son is not disabled. In fact he is capable of and does run ten miles cross-country in a day. The son, himself, testified that he was in good physical condition, and that he could do any kind of job requiring hard or light physical labor.

The root of the problem between this father and his son is the son's bellicose attitude. The record shows that while the son visited for two days in Fort Smith where his father lived, the son did not bother to visit with the father who was still in bed recovering from an operation.

Acts 1975, No. 892, (Ark. Stat. Ann. § 57-103) provides:

> "All persons of the age of eighteen (18) years shall be considered to have reached the age of majority and be

of full age for all purposes, and until the age of eighteen (18) is attained, they shall be considered minors. . . ."

Consequently, the son is now an adult for all purposes except for the attitude of this Court that everybody ought to have a college education. I do not agree with that philosophy. While I agree that college is good for some people, between an adult son and a father, the issue of whether a son goes to college should be left to the father and son without any interference by the courts. One of the old adages of the hills where I grew up was the saying that "there's no fool like an educated fool."

The insinuation in the majority opinion that appellant's present wife has made some support payments from her own funds because she disagrees with her husband's position is not supported by the record which only shows that the payments were made by her from her funds during the process of writing checks for the monthly bills while the husband was off work due to illness or as an accommodation to Mark's mother in making an early payment.

For the reasons stated, I respectfully dissent.