473 A.2d 56

**Helen J. STERN**

v.

**Richard H. STERN.**

**No. 691, Sept. Term, 1983.**

Court of Special Appeals of Maryland.

April 5, 1984.

Sherry A. Bindeman, Washington, D.C., with whom were Hal Witt and Sachs, Greenbaum & Tayler, Washington, D.C., on the brief, for appellant.

Barry H. Helfand, Rockville, for appellee Richard H. Stern.

Stephen P. McCarron, Olney, for appellee David Stern.

Argued Before MOYLAN, LISS and BELL, JJ.

BELL, Judge.

Helen J. Stern sued Richard H. Stern in the Circuit Court for Montgomery County, Maryland, seeking a divorce and other relief. After a separation agreement was signed and a cross bill filed by Mr. Stern, Mrs. Stern sought additional relief including support for two physically disabled adult children. The decision of the court denying her counsel fees, but granting support for one of the adult children, generated this appeal and cross appeal.

Mrs. Stern presented two questions on appeal:

I. Whether the trial court erred in denying the mother counsel fees relating to her claims for child support and arrearages as a result of its failure to apply the statutory standard.

II. Whether the trial court's failure to award the mother counsel fees in connection with her claims for child support and arrearages constitutes an abuse of discretion.

In his cross appeal Mr. Stern asserts that the trial court committed error in five aspects, all relating to awards for or on behalf of the adult son of the parties: Those contentions are,

I. Whether the lower court committed reversible error by receiving and relying upon hearsay parol evidence from a privileged document to alter the plain meaning and unambiguous terms of a contract.

II. Whether the lower court misinterpreted or misapplied the statute requiring parents to support adult children dependent on them for support because of a physical disability.

III. Whether the lower court erroneously ordered defendant to pay the plaintiff ex-wife a money judgment which she lacked standing to claim and collect.

IV. Whether the procedure used by the trial court deprived defendant of due process of law, including, among other things, doing so by violating E.R.A., imposing unfair procedural burdens on defendant, depriving defendant of a jury trial, and entering a judgment not supported by the record.

V. Whether the lower court improperly ordered defendant to pay for the services of an attorney who represented the ex-wife's interests against the defendant's.

## The Family History

Helen J. Stern and Richard H. Stern were married on May 30, 1954. Six children were born to them as a result of this marriage: David H. born May 19, 1958, Miranda Ellen born February 6, 1960, Noah F. born February 28, 1963, Simon D. born November 26, 1964, Hiram R. born July 11, 1968 and Benjamin A. born March 16, 1978. David, Miranda and Hiram are afflicted with cystic fibrosis.

Just prior to the birth of Benjamin, the parties began having serious marital problems and Mr. Stern became involved with another woman. The parties separated briefly several times and in June of 1979, Mrs. Stern filed for divorce in the Circuit Court for Montgomery County. The parties indulged in abundant legal fencing through competent, aggressive counsel. In March of 1980 the parties entered into a voluntary separation and property settlement agreement. This stilled the controversy for a time, and nothing further stirred until June of 1981 when Mr. Stern filed a cross bill for divorce on the grounds of voluntary separation for more than one year. Mrs. Stern answered the cross bill seeking both *pendente lite* and permanent support for the two adult disabled children, (David and Miranda), a use and possession order for the family home, and suit money including counsel fees and court costs.

During the next two years the contest escalated; the files fattened with motions, injunctions, discovery, oppositions and memoranda. The husband clamored for a prompt divorce and enforcement of that portion of the agreement which required the wife to pay him for his share of the house. The wife sought to forestall these actions and to secure a use and possession order for the house of the parties and support for David and Miranda. She abandoned the claim for support for Miranda at the start of a *pendente lite* hearing. There was also much litigation over a second health insurance policy. The discovery was extensive and hotly contested. The paper battle has filled four court jackets and resulted in over 270 docket entries. The arguments on the motions are not even included in the five volume transcript.

### Education and Earnings

Mr. Stern is a lawyer with a specialty in anti-trust and patent law. He received his engineering degree from Columbia Engineering School, his law degree from Indiana Law School, and he clerked for a Supreme Court Justice. He has been Chief of the Intellectual Property Section of

the Anti-Trust Division of the United States Department of Justice. When the trial started in April of 1982, he was a partner of Baker & Hostetler earning approximately $100,-000 per year. By November and December of 1982, at the second portion of the trial, he had been eased out of his prior business association and had started a new firm with one partner who specialized in patent law. At that time he was earning approximately $50,000 per year.

Mrs. Stern received a bachelor's degree from Barnard College in 1954. She was a librarian and had worked from time to time during the marriage. At the time of the continuation of the trial she was working part-time in a bookstore. She had an offer for a full-time job which she rejected because she felt it would not produce sufficient income to justify her being away from the home.

## Cystic Fibrosis and David

Cystic fibrosis is a genetic disorder, which may be inherited only when both parents are carriers. It is typified by thick mucous secretions throughout the body. The digestive tract and the lungs are most severely affected. The disease is generally diagnosed during infancy and becomes progressively more severe. Survival to the 30s and 40s is rare.

Of the three children, David suffers the most severely. He was diagnosed at age 2 as having cystic fibrosis in 1960 and was 24 at the time of trial. He requires daily therapy and has significant pulmonary disability. He has three to five days per month in which he feels "good". At those times he can walk on a level for a block or two but then becomes short of breath. He is chronically exhausted and has at least two coughing spells each hour, during which he becomes incapacitated for a few minutes.

David has three to four sessions per day of physical therapy called postural drainage in order to clear the lungs of mucus. Each session lasts approximately one hour. He is hospitalized five to ten times a year for a period of ten to twenty days each time. In addition to physical therapy, his

regular treatment includes antibiotics, digestive enzymes, vitamins, nutritional supplements, and oxygen equipment supplies. David's medical expenses are approximately $150,-000 per year. Most of this is covered by insurance carried by Mr. Stern.

At age 19 David had been employed as a clerk in the Montgomery County Library System. He left and went to Haverford College to work toward a degree. At the time of the trial he did not and could not retain a regular job. He was living in Ardmore, Pennsylvania, auditing courses, but hoped to return to school when he could afford it. He lived in Pennsylvania because he had friends there and could "live an independent life" but he spent a substantial part of the year living with his mother. David controls his own affairs, signs himself into hospitals when necessary, drives his own car, selects his own doctors, handles his own funds and has secured SSI[1] benefits from Pennsylvania. David does not have a guardian or custodian, nor is it anticipated that application will be made for one.

## The Court's Part

When the case was reached for trial, the court bifurcated the issue of support for David. Sua sponte it appointed counsel for him, heard part of the case and set a later date to hear the portion dealing with David's support.

The court declined to award attorney's fee to Mrs. Stern; however it ordered child support and maintenance for David in the amount of $600 per month and awarded attorney's fees for David's appointed counsel. This appeal resulted.

Additionally the court granted Mr. Stern a divorce, denied Mrs. Stern a use and possession order, denied Mrs. Stern a permanent injunction requiring retention of the second medical insurance policy and required her to pay Mr. Stern

---

1. Supplemental Security Income as provided by Title XVI of the Social Security Act awarded to David based on a factual finding that he was living in his own household, in Pennsylvania, independently with no income.

for the home in accordance with the agreement. There was no appeal from these parts of the decision.

## LAW

Because the right to counsel fees depends, in part, on the resolution of the cross appeal, we will deal first with the questions raised by Mr. Stern.

### The Cross Appeal

I. Whether the lower court committed reversible error by receiving and relying upon hearsay parol evidence from a privileged document to alter the plain meaning and unambiguous terms of a contract.

The parties entered into a separation agreement which they do not attack. Mrs. Stern claims that the issue of support for David was not resolved by the property settlement and in support of that assertion offered testimony of her understanding and letters exchanged by counsel leading up to the making of the agreement. Mr. Stern posits that the contract is not ambiguous and extrinsic evidence cannot be admitted to alter the terms and that it contains the full understanding of the parties. He adds that even if the testimony were admissible the letters should not be admitted as they were hearsay and were privileged communications written in compromise.

Leaving the issue of ambiguity for the moment, we turn first to Mr. Stern's position that the contract contains all the agreements and understandings of the parties.

In support of that position Mr. Stern points to the preamble to the agreement:

It is the mutual desire of the parties to formalize their voluntary separation and to settle all questions of custody of the children, maintenance and support, alimony, counsel fees, their respective rights in the property or estate of the other, and in the property owned by them jointly as tenants by the entireties, and in the marital property, and

all other matters of every kind and character arising from their marital relationship.

It continues further under Miscellaneous Provisions:

4. This Agreement contains the entire understanding of the parties, and there are no representations, warranties, covenants or undertakings of, by or between the parties other than those expressly set forth herein.

■ While this language is very persuasive, the parties cannot bind the chancellor as to the care or maintenance of any minor child. Maryland Code (1957 Repl.Vol. 1981) Article 16, § 28. Since we will find hereafter that David is a "minor child" for purposes of the right to support, the chancellor was not bound by the agreement of the parties in this regard.

■ On appeal Mr. Stern raises two additional grounds not raised below for objection to the letters of counsel: they were hearsay and were privileged communications. If counsel expresses a ground for objection, any basis for objection not stated is waived. *Jackson v. State,* 288 Md. 191, 416 A.2d 278 (1980). The hearsay and privileged communication objections were not raised or ruled on below and will not be reached by us. Maryland Rule 1085.

■ We now approach the alleged ambiguity. The law which applies in this situation is relatively uncomplicated. It was well stated by Judge Singley speaking for the Court of Appeals in *Mascaro v. Snelling and Snelling,* 250 Md. 215, 229, 243 A.2d 1 (1967):

Where contract language is plain and unambiguous, its meaning should be determined without reference to intrinsic facts or aids. Words are to be given their ordinary meaning. However, if the language under consideration is ambiguous or uncertain a court must then determine the intention of the parties. In such a case a court may consider evidence of extrinsic factors: i.e., negotiations of the parties, the circumstances surrounding execution of the contract, the parties' own construction of the contract and the conduct of the parties. (Citations omitted).

Mrs. Stern relies on distinction drawn in the agreement between their children under and over 18, and their children in a general sense. In dealing with the custody of the children, there were different criteria if the child was under or over 18. Mrs. Stern finds particularly significant the careful wording which provides for "support and maintenance of the wife and the minor children of the parties" in one paragraph, and in another

> ... to maintain for the parties' *children* the present medical and health group coverage provided through his present employer or reasonable equivalent medical and health coverage so long as the terms of such insurance policy permit the coverage of such children as children. (Emphasis supplied).

Mr. Stern urges us to hold that "minor children" includes adult disabled children. Mrs. Stern does not agree. Based on the definition of minor child in the Property Disposition in Divorce and Annulment Act (Md.Code (1974 Repl.Vol. 1980) *Courts and Judicial Proceedings Article* § 3–6A–01(d), which includes disabled children over 18 as minor children, the provision could be interpreted either way. Since the term was ambiguous, the chancellor could consider extrinsic factors, including the negotiations of the parties and their understanding of the contract.

In support of the chancellor's interpretation was a letter from Mr. Stern's counsel to the attorney for Mrs. Stern which mentioned the disabled children:

> 7. Disabled children. This should also be discussed at the time the need arises.[2] My recollection is that Article 72A as modified places an obligation on both parents, and we must examine Mrs. Stern's ability if support of a disabled child is required.

---

2. We assume he was referring to Article 27 § 97.

The response on October 16, was

7. *Disabled children.* Again, if the support is resolved as above, Mrs. Stern would accept Mr. Stern's position with regard to this item.

Other correspondence corroborated Mrs. Stern's understanding. The exchange of correspondence by counsel is susceptible of only one conclusion and that is that the parties would defer any provision for support of the disabled adult children until such time as it was necessitated by their condition. We do not find the chancellor's conclusions clearly erroneous.

In view of the foregoing, we hold that the court did not err in admitting the extrinsic evidence explicating the meaning of the support provisions in the parties' agreement.

II. Whether the lower court misinterpreted or misapplied the statute requiring parents to support adult children dependent on them for support because of a physical disability.

Mr. Stern apparently concedes that the court may require parents to support adult children based on the requirements of Article 27 § 97 of the Maryland Code. His position is that the court erred in applying that statute in three ways. First, the record indicates that David was emancipated and cannot subsequently become a dependent. Second, the statute was not intended to apply to persons who live independently and on their own out-of-state. "Third, the record does not support the necessary findings required to bring a case within the statute."

The statute in question is Article 27 § 97 of the Maryland Code, which provides:

Any person who has an adult child destitute of means and unable to support himself by reason of mental or physical infirmity, who is possessed of or able to earn means sufficient to provide such child with necessary shelter, food, care, and clothing and who neglects or refuses so to do, shall be guilty of a misdemeanor and,

upon conviction thereof, shall be fined not more than $1,000 or imprisoned for not more than one year, or both. This particular statute was construed in *Smith v. Smith,* 227 Md. 355, 360, 176 A.2d 862 (1962), to be a clear indication of the intent of the legislature to place failure to support an incapacitated child on equal footing with failure to support a minor child.

David never performed more than a part-time job. If his family had not been providing the bulk of his support, including major medical expenses, he would have been destitute. David was never free from economic dependence upon his parents and the court did not err in finding that support should be awarded to him by reason of his physical infirmity.

Mr. Stern points to David's part-time job at 19, his SSI benefits, his living in Pennsylvania, his attending school and his lack of guardianship, to establish that David was emancipated. Merely living in Pennsylvania and receiving SSI benefits does not make David emancipated; however, even if we accept Mr. Stern's view that David was at one time an emancipated child, we would then reexamine § 97 to see whether David could later be brought under its protection.

■ The Court of Appeals admonition was repeated in *Rome v. Lowenthal,* 290 Md. 33, 41, 428 A.2d 75, (1981):

> In construing the statute here in question we are obliged by our prior holdings to ascertain and carry out the real legislative intent to consider the enactment in its natural and ordinary signification; to not insert or omit words to make an express intention not evidenced in its original form; and, if reasonably possible absent a clear indication to the contrary to read the statute so that no word, clause, sentence or phrase is rendered surplusage, superfluous, meaningless, or nugatory.

We consider § 97 as it applies to the case sub judice in light of Mr. Stern's complaints. There is nothing in the wording of the statute which precludes its application to an emancipated child who thereafter becomes a dependent adult child. There is nothing which precludes application to a destitute

adult child who becomes self-supporting and again becomes destitute. There is nothing that precludes a proceeding on behalf of a non-resident child against a resident parent. We will not rewrite the statute to delete those applications.

■ David is an adult child factually found to be destitute within the meaning of Article 27 § 97. That holding of the chancellor is amply supported by the record.

> III. Whether the lower court erroneously ordered defendant to pay Mrs. Stern a money judgment which she lacked standing to claim and collect.

■ Mr. Stern argues that the court has no authority to award Mrs. Stern a judgment for the money needed for David's support because David is sui juris and could have sought support in his own name.

The Court of Appeals in *Smith v. Smith, supra,* at 360, 176 A.2d 862, in awarding support to the mother of an adult disabled child after holding that an award is appropriate for "a destitute adult child where mental or physical infirmity makes it impossible for the child to care for itself" opined:

> ... The passage of this act is a clear indication of legislative intent to place failure to support an incapacitated child on equal footing with failure to support a minor child. In our opinion, therefore, the Chancellor was justified in recognizing this legislative policy and awarding support payments for the disabled adult child, whom the testimony showed was destitute of other means of maintenance.

Since the Court of Appeals has held that the legislature intended "to place the failure to support an incapacitated child on equal footing with failure to support a minor child," it follows that the procedure and remedies for the enforcement of that right must also be "on equal footing".

We agree with Mr. Stern that David could have brought suit in his own name or sought criminal prosecution by the State. We note that Mrs. Stern could have sought contribution in a law action for support for David after the fact.

But this is not to say that she could not have elected to pursue her rights in an equity court as the de facto custodial parent. The mere fact that there are alternate procedures does not invalidate the selected course of action. "The existence of a right to bring action at law will not oust the jurisdiction of equity, if there is any ground upon which relief in equity may be invoked." *Nagel v. Todd,* 185 Md. 512, 518, 45 A.2d 326 (1946).

 IV. Whether the procedures by the trial court deprived defendant of due process of law, including among other things, doing so by violating ERA, imposing unfair procedural burdens on defendant, depriving defendant of a jury trial, and entering a judgment not supported by the record.

Mr. Stern has raised a panoply of reasons why he was deprived of due process of law. We will answer them seriatim.

■ First, based on the Equal Rights Amendment to the Maryland Constitution the duty of support is a joint duty of both parents.

We agree with Mr. Stern. In *Rand v. Rand,* 280 Md. 508, 374 A.2d 900 (1977) the Court of Appeals settled that issue. After detailed findings on the parties' respective ability to pay in the Memorandum Opinion of January 2, 1983, the chancellor in the instant case stated that:

 Based upon a consideration of all the evidence, the Court finds a financial need for the support of David (other than medical) of approximately $800.00 per month. This reflects a lesser amount than that shown on Petitioner's Exhibit No. 2 which presumes his continued residence in Pennsylvania. No need has been demonstrated for David's continued residence in Pennsylvania, and it is apparent that David's living expenses can be materially reduced by his returning to live in his mother's residence in Maryland. The division of this requirement between the parties, after considering their respective financial

conditions, on the basis of ¾ to be paid by the father and ¼ by the mother, will result in a monthly obligation on the part of Richard Stern of $600.00, said sum to be paid to Mrs. Stern. Mrs. Stern's contribution can be met by providing room and board at her residence.

We cannot say the chancellor was clearly erroneous.

■ Second, this case should have been an independent action, preferably on the law (or jury) side of the circuit court and David should have been a party.

Mr. Stern did not move to bifurcate David's claim nor to transfer it to the law side of the circuit court. He simply did not preserve this issue for review. Maryland Rule of Procedure 1085.

■ Mr. Stern complains that because David was not a party, he was not available for examination. Discovery was a problem throughout this case with both Mrs. Stern and David. Nevertheless, the record does indicate that before trial, the chancellor gave Mr. Stern opportunity and time to conduct such discovery as was needed. When the trial began, there was no request for a continuance or other relief because of the lack of prior cooperation in this regard. Any prejudice in that respect was waived.

■ Third, that the cause of action should have been tried before a jury.

Mr. Stern did not seek to have the case transferred to the law side. Maryland Rule 515. Mr. Stern did not demand a jury trial. Maryland Rule 343. Mr. Stern did not preserve this issue for appeal, Maryland Rule 1085.

■ Fourth, the judgment for David's support ignored the record and deprived Mr. Stern of a fair trial.

The decision of the chancellor was supported by the record and we do not consider it to be clearly erroneous or that he abused his discretion.

V. *Whether the lower court improperly ordered defend-*
*ant to pay for the services of an attorney who repre-*
*sented the ex-wife's interests against the defendant's.*

 Mr. Stern complains that the chancellor erred in
appointing counsel for David. He complains that David's
counsel sat at the same table with Mrs. Stern's counsel,
propounded interrogatories to him, cross-examined him, and
requested support from him. Mr. Stern was seeking to
avoid support for David; Mrs. Stern was not. In view of
Mr. Stern's attitude toward maintenance for David, it would
not be likely that David would have been comfortable at the
table with him. David's counsel should and did expend his
efforts to represent the best interests of that client.

 Mr. Stern also argues that the agreement waived
future attorney's fees. It is true Mrs. Stern did waive
future fees for herself. She could not and did not waive
fees for counsel for David, who was not a party to that
settlement.

Mr. Stern finally complains about the amount of David's
counsel's fees and that it was awarded strictly against him.

 Maryland Code (1974 Repl.Vol. 1980) *Courts and*
*Judicial Proceedings* Article § 3–604 provides:

Appointment of counsel for minors.

The court, for good cause, may appoint an attorney to
represent a minor in any action brought under this subti-
tle in which the issue of custody, visitation rights, or the
amount of support, is contested and may levy counsel fees
against either or both parents as is just and proper under
all the circumstances. An attorney appointed to represent
a minor may not represent any party to the action.

We hold, consistent with the conclusion that it is the intent
of the legislature that disabled adult children be placed on
an equal footing with minor children, that this section
likewise applies to disabled adult children. In *Lapides v.*
*Lapides,* 50 Md.App. 248, 437 A.2d 251 (1981), Judge Lowe
speaking for this Court held 437 A.2d at p. 253:

It is explicit in that statute that the minors are not only entitled to representation, but that their counsel is entitled to compensation from the parents, and it is implicit therein that the children have 'standing' to do that which is necessary to protect both counsel and themselves.

■ In assessing attorney's fees for David's counsel solely against Mr. Stern, the chancellor found that the amount would be

payable by Mr. Stern in recognition of Mrs. Stern's obligation to pay her attorney for assistance in pursuit of David's claim.

We hold that the award to David's counsel was within the discretion of the chancellor, and that discretion was not clearly abused.

### The Appeal

I. Whether the trial court erred in denying the mother counsel fees relating to her claims for child support and arrearages as a result of its failure to apply the statutory standard.

■ Mrs. Stern contends that the chancellor denied her counsel fees without considering the factors set forth in the statute. Mr. Stern counters that claim by pointing out that the chancellor based his rulings "upon a review of the file" and that a finding on each factor is not mandated. Mr. Stern adds that the parties expressly agreed to bear their own attorney's fees by agreement. Because we will affirm the chancellor's findings on attorney's fees, we will not need to reach his last argument.

Article 16, § 5A of the Maryland Code provides:

In all cases where a person makes an application for a decree or modification of a decree with respect to the custody, the amount of support or visitation rights concerning a child or children of the parties, or files any form of proceeding to recover arrearages of child support or otherwise to enforce such decree, the court, after considering the financial status of both parties, their respective

needs and whether there was substantial justification for instituting or defending the proceeding, may make such award of costs and counsel fees to either party as shall be just and proper under all circumstances.

Mrs. Stern sought counsel fees in connection with the trial. In his memorandum opinion of April 14, 1982, the chancellor initially denied such fees.

Mrs. Stern has requested that Mr. Stern be required to pay the attorney fees she has incurred in the prosecution of this case based on her claim that the matters involved were taken in the interests of the minor children of the parties. The Court has reviewed the file in this case and finds that both parties have been responsible for unnecessary and dilatory pleadings which have resulted in exceptionally high attorney fees incurred by the parties. Based upon a review of the file, the Court concludes that each party should bear the cost of its [sic] attorney fees.

At the later hearing which dealt with the claim for support for David, Mrs. Stern asked the chancellor to reconsider his prior ruling. In the memorandum opinion of January 10, 1983, the court held:

The Court will, therefore, order payment of his [David's counsel's] fee in the amount of $5,000, said amount to be paid by Mr. Stern in recognition of Mrs. Stern's obligation to pay her attorney for assistance in pursuit of David's claim. Other attorney fees incurred by the parties in these proceedings shall be borne by the party incurring them.

Mrs. Stern objects to the failure of the chancellor to specify, as to each factor, the evidence he considered before reaching his decision on whether to award her attorney's fees.

In *Lapides v. Lapides, supra,* 437 A.2d at 252, Judge Lowe dealt with an appeal from an award of attorney's fees and held:

The exercise of a judge's discretion is presumed to be correct, he is presumed to know the law, and is presumed

to have performed his duties properly. Appellant has not overcome that presumption. (Citations omitted).

This was followed by *Grant v. Zich,* 53 Md.App. 610, 618, 456 A.2d 75 (1983) *cert. granted,* which discussed factors to be considered in awarding alimony. In that case we held through Judge Adkins that:

[W]hile the chancellor did not specifically refer to some of the other standards (e.g. the 'standard of living established by the parties during the marriage', Art. 16, § 1(b)(4) we do not think that he was necessarily required to go through a detailed check list of the statutory factors, specifically referring to each, however, beneficial such a procedure might be (under both Art. 16, § 1 and under § 3–6A–05(b) of the Courts Article) for purposes of appellate review. Reading his entire memorandum and order, and the record he had before him, we conclude that consideration was given to the enumerated standards. The chancellor did not need to invoke expressly the wording of the statute to demonstrate such consideration. (Citations omitted).

The chancellor tried the case and was familiar with all the facts. He represented that he reviewed the file. He is entitled to the presumption that he has performed his duties properly. We hold that Mrs. Stern has not overcome that presumption.

II. Whether the trial court's failure to award the mother counsel fees in connection with her claims for child support and arrearages constitutes an abuse of discretion.

Mrs. Stern calls our attention to the case law which emphasizes the existence or absence of "substantial justification" for instituting or defending the proceeding as a factor in determining whether counsel fees should be awarded to her. She refers us to *Reese v. Huebschman,* 50 Md.App. 709, 715, 440 A.2d 1109, 1113 (1982) where we held that:

[T]he question of substantial justification is a matter of law. Once substantial justification is found, the amount is left to the discretion of the Chancellor. (Citations omitted).

She also relies on *Jackson v. Jackson,* 272 Md. 107, 321 A.2d 162, 166 (1974), where the Court of Appeals, applying Article 16, § 5A, reversed a trial court's denial of counsel fees to a mother, stating that, "While the statute vests discretion in the chancellor, the exercise of that discretion must be based on the statutory criteria and the facts of the case."

Mrs. Stern avoids mentioning that in *Reese v. Huebschman, supra* 50 Md.App. at 716, 440 A.2d 1109, we remanded to award attorney's fees "in an amount he, in his discretion, see *Jackson v. Jackson,* . . . thinks is 'just and proper under all the circumstances' . . . . "She similarly ignores the reference in *Jackson, supra,* of the direction to the trial court to base its discretion on the statutory criteria and "the facts of the case."

We agree with Mrs. Stern that there was "substantial justification" for a part of the litigation; however, the chancellor is also directed to consider the financial status of both parties and their respective needs and then "may make" such award "as shall be just and proper under all circumstances."

There was ample evidence of the financial status of the parties and their respective needs. There was also abundant evidence that much of the litigation was not substantially justified. In addition, the chancellor made no portion of the award for David's counsel against Mrs. Stern in recognition of her payment of her own fees.

Mrs. Stern recounts all the details of the litigation which should weigh in her favor in awarding fees. Mr. Stern lists all the contra-indications. The chancellor found that battle a draw. We hold that he did not abuse his discretion.

JUDGMENT AFFIRMED.

COSTS TO BE BORNE EQUALLY.