Argued and submitted February 24, affirmed in part, reversed in part May 9, reconsideration denied June 29, petition for review allowed August 8, 1984

(297 Or 546)

See 299 Or 616 (1985)

## In the Matter of the Marriage of

### HAXTON,
*Respondent,*

*and*

### HAXTON,
*Appellant.*

(No. 78-0873)

### HAXTON,
*Respondent,*

*v.*

### HAXTON,
*Appellant.*

(No. 15-82-08058)

(CA A27976)

680 P2d 1008

James A. Hendershott, Eugene, argued the cause for appellant. With him on the briefs was Hendershott & Hendershott, Eugene.

Gary K. Jensen, Eugene, argued the cause and filed the brief for respondent.

Before Richardson, Presiding Judge, and Warden and Newman, Judges.

WARDEN, J.

## WARDEN, J.

Father appeals from a judgment of the trial court requiring him to pay $225 monthly for support of his mentally handicapped son, James, who is over the age of majority and is not attending school. We reverse.

Mother first sought to require father to contribute to the support of James by a motion to modify the decree of dissolution of their marriage.[1] Two months later, she commenced a separate action for his support as a dependent child, first in her own name and, later, by an amended complaint as guardian ad litem for James. The two proceedings were consolidated for trial.

At the time of trial, James was 20 years old, unemployed and living in mother's home. According to the testimony of a psychologist who examined him, he has an IQ of about 70 and is "learning disabled." The psychologist indicates that, because of James' level of intelligence and his emotional problems, he cannot obtain employment and support himself. The trial court found that he is a mentally retarded person over the age of 18, and that he is "poor and unable to maintain himself" and awarded the judgment appealed from.

The question presented is whether the trial court had authority to require father to support his son. Because James is neither a minor nor a child between the ages of 18 and 21 who is unmarried and regularly attending school, the statutory provisions authorizing support under the decree of dissolution of the marriage of father and mother are inapplicable. *See* ORS 107.105; ORS 107.108; *Langnese and Langnese,* 13 Or App 88, 508 P2d 831 (1973).[2] Although James argues that, as a matter of public policy, support awards under a divorce decree should be permitted for incapacitated adult

---

[1] In the motion to modify the decree, mother also sought an increase in support for the parties' other minor child in her custody, John. That modification of the decree is not at issue here.

[2] The court issued a single judgment for both proceedings; it modified the decree of dissolution to require greater support for the minor son John and awarded James support in his separate action. Apparently because it awarded support to James, the trial court did not decide whether mother was entitled to have the decree modified to provide support for him.

children, the parties agree that the trial court's authority, if any, for the award here must be found in ORS 109.010:

> "Parents are bound to maintain their children who are poor and unable to work to maintain themselves; and children are bound to maintain their parents in like circumstances."

Father contends that ORS 109.010 does not confer authority on a court to enter an order of support, because the statute merely states a general obligation of support and does not create a procedure to compel such support.[3] We agree.

In *State ex rel AFSD v. Lester,* 45 Or App 389, 608 P2d 588 (1980), we considered whether ORS 109.010 provides a legal basis for the Adult and Family Services Division to initiate proceedings for an order of support from a parent for a 16-year-old child for whom support payments were not required by an existing divorce decree:

> "It is true that ORS 23.789(2) authorizes AFSD to 'initiate proceedings for orders of support' under chapter 109 and that ORS 109.010 is a section of that chapter, but such a simplistic reading ignores the statutory scheme. *ORS 109.010 merely states a legal duty; it does not provide for a legal procedure for the enforcement of that duty. That is done in other sections.* Two examples illustrate this point: ORS 109.100 provides a procedure whereby a child, or the state on the child's behalf, can apply to the circuit court for an order requiring a parent to provide for the child's support in the absence of a dissolution decree. ORS 109.125 to 109.235 provides a filiation procedure culminating in a support order. In proper cases, AFSD may avail itself of any of the judicial procedures and remedies provided by ORS ch 109 for the enforcement of the general parental obligation described by ORS 109.010, but it may not create new ones by sole virtue of ORS 109.010." 45 Or App at 393. (Emphasis supplied; footnote omitted.)

Although *Lester* involved AFSD's seeking child support from the father as assignee of the mother's rights, rather than a child seeking support directly, its holding is equally

---

[3] Father also argues that ORS 109.010 applies only to children under 18 years of age and that a separate award of monthly support to a child, when there exists a previous decree that awards support only so long as the child is under 21 years of age, unmarried and regularly attending school, constitutes an impermissible collateral attack on that decree. Because we find that ORS 109.010 does not authorize an award of support to a child, we do not discuss those contentions.

applicable here. ORS 109.010 imposes on parents a general duty of support, but it provides no procedure to enforce that duty. That procedure must be found in other statutory provisions, and James has pointed to none in ORS chapter 109 or in ORS chapter 107.[4] *See also Coastal Adjustment v. Wehner,* 246 Or 115, 423 P2d 967 (1967). Because ORS 109.010 states only a legal duty to support and provides no procedure for its enforcement, and because we find no procedure provided in other relevant statutory provisions, we hold that the trial court was without authority to enter a judgment ordering support.

*Haxton and Haxton,* No. 78-0873, is affirmed; *Haxton v. Haxton,* No. 15-82-08058, is reversed.

---

[4] Our conclusion today does not mean that a needy adult child is precluded from seeking support in a proper proceeding. Specifically, ORS 416.090 creates a cause of action for support for a needy person (as defined in ORS 416.010(3)) against certain relatives of that person, including parents. As to whether James qualifies as a needy person within the purview of ORS 416.090, we express no opinion.