Franklin Delano TOWERY *v.*
Diana J. TOWERY

84-190                                   685 S.W.2d 155

Supreme Court of Arkansas
Opinion delivered March 4, 1985

*Daily, West, Core, Coffman & Canfield,* by: *Stanley A. Leasure;* and *Tucker & Thrailkill,* by: *Patricia A. Tucker,* for appellant.

*Maddox & Miller,* by: *G. D. "Steve" Stephenson,* for appellee.

DARRELL HICKMAN, Justice. The general rule is that once a child reaches majority and is physically and mentally normal, the legal duty of the parents to support that child ceases. The question in this case is whether that duty can be reimposed later if the adult child becomes disabled and needs support. The answer is that the law imposes no such duty regardless of what the moral obligation may be. The facts in this case are largely undisputed.

Timothy Dewitt Towery was 17 when his parents divorced in August, 1980. The Towerys had two other grown children and no provision for their care and support was ordered. Franklin Towery, the father and appellant, pursuant to court order, provided support for Timothy until he reached his majority. Timothy graduated from high school in May, 1981, and legally became an adult on his 18th birthday, June 16, 1981. Timothy attended Henderson State College on a football scholarship and completed three semesters. During summer vacation of 1982, he worked full time in the Texas oil fields. On a visit to Arkansas in June, 1982, he was injured in an automobile accident which left him a quadriplegic. It was stipulated that Timothy was emancipated before the accident. In January, 1984, Timothy's mother petitioned the Polk County Chancery Court to require Franklin to resume contributions toward Timothy's support. She testified Timothy's monthly needs totaled $625, of which $229 is paid by social security. Timothy had dropped out of college but intended to return. Timothy did not join in this suit although it is undisputed that he is mentally competent.

After hearing testimony, the chancellor ordered the father to pay the mother $215 a month support. No time lilmit was placed on the order. The appellant's main argument on appeal is that the law cannot require a parent to support an adult child who has become emancipated. Under these circumstances, we agree.

All family members have some legal obligations to each other. Often what are generally recognized as moral obligations among family members are also recognized by the common law or by statutes to be legal obligations. For

instance, children must generally obey their parents and have their consent in legal matters. 59 Am. Jur. 2d, *Parent and Child,* §§ 8-24. Also, it is elementary that parents must support their minor children. *Johnson* v. *Mitchell,* 164 Ark. 1, 260 S.W. 710 (1924). This duty of support was the common law and has become codified; in Arkansas the law is Ark. Stat. Ann. § 57-633 (Repl. 1977). The legal obligation ceases at some point, just as the duties of the child to the parent cease. While the statutory law in Arkansas does not expressly state when the duty ceases, we have easily found it to be at the age of majority. *Hogue* v. *Hogue,* 262 Ark. 767, 561 S.W.2d 299 (1978); *Worthington* v. *Worthington,* 207 Ark. 185, 179 S.W.2d 648 (1944); *Missouri Pacific Railroad Co.* v. *Foreman,* 196 Ark. 636, 119 S.W.2d 747 (1938). The rule which we and most, if not all, states follow is that "[o]rdinarily the legal obligation of a parent to support a normal child ceases upon majority of the child." *Worthington* v. *Worthington, supra.* In Arkansas a child reaches majority at age 18. Ark. Stat. Ann. § 57-103 (Supp. 1983).

We have recognized some exceptions to the general rule. We have held the duty to support a child does not cease at majority *if* the child is mentally or physically disabled in any way *at* majority and needs support. *Eskridge* v. *Eskridge,* 216 Ark. 592, 226 S.W.2d 811 (1950) (physically injured at birth); *Petty* v. *Petty,* 252 Ark. 1032, 482 S.W.2d 119 (1972) (epilepsy); *Elkins* v. *Elkins,* 262 Ark. 63, 553 S.W.2d 34 (1977) (dyslexia). A great number of states also recognize that exception. Note, *Duty of Continued Child Support Past The Age of Majority* 1 UALR L.J. 397 (1978); 1 A.L.R.2d 910, 921 (1948). Some states have founded this duty on common law, as we have. *Brown* v. *Brown,* 474 A.2d 1168 (Pa. Super. 1984); *Grapin* v. *Grapin,* 450 So.2d 853 (Fla. 1984). The Missouri Supreme Court pointed out the need to stray from the common law rule and to support disabled children when they reach majority stating that "our courts should depart from the common law rule of nonliability to support an adult child if that rule is not suited to the conditions and needs of the people of the state." *State* v. *Carroll,* 309 S.W.2d 654 (Mo. 1958). The court further recognized that the majority of the states were negating the common law rule

and "following the 'dictates of humanity' by enforcing the exception." Other states have based this duty on statute. *Stern* v. *Stern,* 58 Md. App. 280, 473 A.2d 56 (1984); *Miller* v. *Miller,* 62 Or. App. 371, 660 P.2d 205 (1983); *State* v. *Panzeri,* 76 Ida. 211, 280 P.2d 1064 (1955); *Hight* v. *Hight,* 5 Ill. App. 3d 991, 284 N.E.2d 679 (1972).

In only one case have we extended the duty of a parent to support a child beyond majority who did not have a handicap or disability. In *Matthews* v. *Matthews,* 245 Ark. 1, 430 S.W.2d 864 (1968), we required a father to continue child support for six months after his daughter reached majority so she could finish high school. We considered this exception as only a "slight extension" of the father's duty and noted that a high school diploma is extremely important to a person seeking to support herself. Beyond these deviations we have not extended the parental duty beyond majority.

All of these cases which found a legal parental duty deal with unemancipated children who reached their majority unable to care for themselves. The question before us is unique because the legal duty has been severed. Should a court, absent statutory guidelines, reimpose that duty?

In examining the decisions of other courts which have been faced with that question, we find the attempts to reimpose a duty to support, absent a statutory provision, have been rejected. Florida found no such legal duty for the parent to provide support for an adult child even though the court believed parents should provide their children with as much formal education as possible. In *Keenan* v. *Keenan,* 440 So. 2d 642 (Fla. App. 5 Dist. 1983) the court said:

> While we firmly believe that parents, divorced or undivorced should provide their children with as much formal education as each child can absorb and the parents can afford, this court cannot create a legal duty to do so where none exists. That power rests in the legislature.

In a similar case involving college education costs, the Florida court said:

While most parents willingly assist their adult children in obtainig a higher education that is increasingly necessary in today's fast-changing world, any duty to do so is a moral rather than a legal one. Parents who remain married while their children attend college may continue supporting their children even beyond age twenty-one, but such support may be conditional or may be withdrawn at anytime, and no one may bring an action to enforce continued payments. It would be fundamentally unfair for courts to enforce these moral obligations of support only against divorced parents while other parents may do as they choose.

*Grapin* v. *Grapin, supra.*

In *Breuer* v. *Dowden,* 207 Ky. 12, 268 S.W. 541 (1925), the Kentucky court held that the parent was not liable for his disabled adult child's debts in the absence of a statute to the contrary. The court stated:

That if at the time the child becomes of age he is reasonably physically and mentally sound and able, if willing, to make and earn his own support, the parent is not liable for his debts or obligations thereafter contracted, even though he should later become sick or mentally unbalanced and therefore incapacitated to earn a livelihood.

The Indiana appellate court held in *Pocialik* v. *Federal Cement Tile Co.,* 121 Ind. A. 10, 97 N.E.2d 360 (1951), that once the parent's liability of support terminated, the liability will not be restored due to a subsequent change in the condition of the child. In this case, the appellant was seeking compensation for her father's death. The court held that she was not able to recover under the Compensation Act because she was not a presumptive dependent within the Act's definition. The court did not find any statute which imposed a duty on the deceased father to support his adult daughter under the facts of this case.

In *State* v. *Panzeri, supra,* the Idaho court held there was no duty on a parent to support an adult child who was

mentally competent when he attained majority but later became disabled. There was no such duty at common law, and for one to exist, it must be created by statute. This case was an action against the estate of a mother of an adult insane person for the cost of care and treatment of an adult in the state hospital. There was a statute providing for the recovery of costs for the care of insane persons. The suit was brought pursuant to that statute.

The Maryland Court of Special Appeals decided that their statute requiring a parent to support dependent children could be construed to require support of an adult child who became disabled after emancipation. There was nothing in the wording of the statute which precluded its application to an emancipated child who later becomes a dependent adult child. *Stern* v. *Stern,* supra. In Oregon the court held a father could not be ordered to support a mentally handicapped child that had reached majority and was not attending school. This was despite an Oregon statute that provided: "Parents are bound to maintain their children who are poor and unable to work to maintain themselves; and children are bound to maintain their parents in like circumstances." *Haxton* v. *Haxton,* 68 Or. App. 218, 680 P.2d 1008 (1984). In *Koltay* v. *Koltay,* 667 P.2d 1374 (Colo. 1983), a father was ordered to continue to support a handicapped child beyond majority because the child was not "emancipated" under Colorado law. But in dictum, the court observed that "the Uniform Dissolution of Marriage Act does not provide for the support of a child who is emancipated at the age of majority and later becomes disabled."

The appellee is asking us to reimpose a legal duty that no longer exists. It was stipulated that the child in this case was emancipated before the accident. He was not living with his father. That means he had no legal duty to his father and the father had none to him. If any obligation exists it is moral, not legal. Arkansas has no statute that imposes a legal duty on this father.[1] We take the same view that other

---

[1] That does not mean, however, that the legislature is blind to all cases of special need. Ark. Stat. Ann. § 59-115 (Repl. 1971) provides that the parents of an insane child shall maintain it if financially able, and the children of insane parents shall provide for them, if able.

states do; absent a statute, we cannot interfere for to do so would be to impose our personal moral judgment on the father as to what he ought to do, rather than what the law requires he do.

Timothy decided, as he well should have, where he wanted to live, where he wanted to go to college, and how he would live. Undoubtedly, his case is tragic, and he needs some financial assistance. Perhaps his father ought to help; perhaps he will. That is for him to decide, not this court.[2]

Since there is no statutory or constitutional authority for the court's order of support, it must be reversed. We need not address the other issues raised which are jurisdiction and standing of the mother to bring the suit.

Reversed and dismissed.

HAYS, J., dissents.

STEELE HAYS, Justice, dissenting. The Chancellor reached a fair and equitable result in this case by ordering the father to pay $215 for the support of Timothy. In that fashion the $625 needed each month for Timothy's maintenance through college was divided equally between the mother (whose income was $850 per month), the father (whose income was $1,932 per month) and Timothy, Timothy's part coming from a social security check of $229 per month.

I can see no reason to override the Chancellor on the

---

[2]Actually, the testimony is not entirely unfavorable to the father. He said he bought an expensive van, had it equipped for a handicapped person, and arranged for driving instructions. Timothy said he had used the van about a dozen times but declined the lessons because his father would not let him drive alone. The father wanted Timothy to attend the local community college; Timothy wanted to enroll at Henderson State University. Timothy chose to live with his mother and his social security benefits were reduced because it was found he was a dependent of his mother's. Timothy's mother brought the suit; he didn't. A majority of the court chooses not to rule on the standing issue to avoid a remand which would delay but not resolve the main issue. See *Upchurch* v. *Upchurch*, 196 Ark. 324 117 S.W.2d 339 (1938).

circumstances of this case, unless this court is adopting a rigid rule that any duty of support ends when a child reaches age eighteen. While we have said that *ordinarily* when a child comes of age the duty of a parent ends, we have stressed the fact that it is not an inflexible rule, but one that is dependent on the circumstances of the case. *Matthews* v. *Matthews*, 245 Ark. 1, 430 S.W.2d 834 (1968).

In *Matthews* we upheld the Chancellor in ordering a father to continue supporting an adult daughter for some six months until she graduated from high school. We expressly recognized the importance of a high school diploma in obtaining work. If that was the right result on those facts, as clearly it was, of how much greater importance is a degree in accounting to Timothy Towery, a quadriplegic. Without a degree or some useful skill, his chances of ever providing for himself are virtually non-existent, whereas, the daughter in the *Matthews* case could certainly have found employment of some kind irrespective of a high school diploma. Thus, the circumstances of this case seem far more compelling than those in the *Matthews* case.

The majority opinion states that Timothy Towery had dropped out of college, but intended to return. If that statement implies that Timothy had dropped out of college before his accident, it is incorrect. After graduating from high school in May, 1981, Timothy attended Henderson State University in the fall of 1981 and the spring of 1982, prior to the accident in June, 1982. Emancipation is dependent on the circumstances of each case, (see 67A C.J.S., Parent and Child, § 5) and Timothy Towery had not become emanicipated in the sense that he had voluntarily ended his education and embarked on a chosen course in life, he was merely working during the summer to help pay for college, just as he had the previous summer. At the time of the accident he was barely nineteen years old, was living temporarily with his brother in Texas in order to work in an oil field. It is undisputed that he intended to return to college in the fall and was saving money for that purpose.

I believe the Chancellor's order should be affirmed until Timothy finishes college or chooses some other course.