2010 Ark. App. 109

**Shelby BARNETT and Linda Barnett, Appellants**

v.

**Keith GOMANCE and Wanda Stafford, Appellees.**

**No. CA 09–847.**

Court of Appeals of Arkansas.

Feb. 3, 2010.

Mitchell H. Cash, Marshall, AR, for appellant.

Derek Scott Hickam, Hot Springs, AR, for appellee.

COURTNEY HUDSON HENRY, Judge.

Appellants Shelby and Linda Barnett appeal the trial court's decision in favor of appellee Wanda Stafford on her complaint alleging trespass. For reversal, the Barnetts contend that the trial court erred in finding that they had not proven their claims of adverse possession or a boundary by acquiescence. We affirm.

This case began with a complaint brought by Keith Gomance against the Barnetts to establish an easement by necessity to property owned by Gomance. The litigation evolved into a boundary-line dispute between the Barnetts and Wanda Stafford, Keith Gomance's mother. Stafford and the Barnetts are adjacent landowners in Garland County, and Stafford's property lies to the east of the Barnetts' land. Stafford and her then-husband, Dale Gomance, acquired the property in 1963. In 1966, Stafford obtained title solely in her name. The Barnetts purchased their property in November of 1997 from Jerry and Barbara Bethurum. Prior to that, Hubert Sorrells owned the Barnetts' land. Keith Gomance currently resides on Stafford's property.

The focus of this case centers on a wire fence that has been in existence for many years. It is undisputed that the fence is not on the true boundary line separating Stafford's and the Barnetts' properties. Instead, it lies some thirty feet inside Stafford's property. As her claim of trespass, Stafford alleged that the Barnetts had erected a new fence on the old fence line, which she claimed was entirely on her property. Appellants defended on the ground that they had acquired ownership of the property to the old-wire fence by adverse possession. In a post-trial brief, appellants also asserted that the fence had become the parties' boundary by acquiescence.

At trial, Stafford testified that her land is part pasture and part timber. The south fork of the Saline River lies on the southern portion of the property. Stafford said that there was an old fence in the area that she had been aware of for about forty years. She testified that it was "just an old piece of a fence" that was "never taken care of." Stafford stated that Hubert Sorrells, appellants' predecessor in title, had run cattle and had pastured his land up to the old fence.

Keith Gomance testified that he had lived on his mother's property for forty-four years. He recalled that there was a fence on the boundary line when his father and Hubert Sorrells owned the respective properties. Gomance said that the fence fell down every time the Saline River flooded and that it completely washed away during one particularly heavy flood. He testified that both his father and Sorrells had cattle and that, after this flood, his father gave Sorrells permission to nail wire to the trees to keep their cattle separated, rather than incur the cost of rebuilding a fence on the boundary line whenever the river flooded. Gomance said that the wire was not straight and that it extended from tree to tree for about one hundred feet and that they also relied on a "big wash" to contain their cattle the rest of the way. He stated that it was a courtesy fence and that everybody knew that the property line was where the original fence had stood. He added that the property had been surveyed three times in the intervening years. Gomance maintained that appellant Shelby Barnett also knew the location of the boundary line. He recounted a conversation he had with Barnett during which Barnett "pointed from north to south and told me he knew exactly where the line was." Gomance said that the area Barnett indicated coincided with the location of the original fence that kept washing away.

Shelby Barnett testified that he and his wife bought the land to use as a cattle farm. He said that the fence was there when they purchased the property and that the wire was attached to a couple of large sycamore trees and a pine tree. He said that the wire was old and had grown into the trees six to eight inches. Barnett testified that he considered his eastern

boundary to be the fence line. He said that he had maintained the old fence when it needed repair and that he had cut hay and grazed cattle to the fence since he bought the property. He also stated that he built the new fence to contain his cattle after the old one was destroyed when a debris pile that Keith Gomance stacked on the fence caught fire.

Barnett further testified that there was a gap in the wire fence when he purchased the property, which he assumed was there to allow access between the properties. He also said that he requisitioned John Williams to perform a survey when he bought the property. Barnett testified that he was familiar with the boundary line shown by Williams on the survey, but he said that he disagreed with Williams's conclusions.

In rebuttal, Stafford's husband, Billy, testified that he had discussed the boundary with Mr. Barnett. Billy said that Barnett acknowledged that the wire fence was not the boundary line. John Williams also testified that he prepared surveys of the boundary line in 1997 for the Barnetts and in 2005 for Stafford. He stated that the old fence was not on the true boundary line.

At the conclusion of the testimony, the trial court asked the parties to submit simultaneous letter briefs. In a letter opinion, the trial court ruled in Stafford's favor, finding "that the preponderance of the evidence shows that the [Barnetts] failed to comply with A.C.A. § 18–11–106 and failed to show that the use by the [Barnetts] was notorious, hostile, and exclusive or that the [Barnetts] had taken any action to put [Stafford] on notice that they were seeking to convert the permissive use into a claim of ownership." The court subsequently entered an order reflecting its decision.

The Barnetts promptly filed a motion objecting to the entry of the order, arguing that the requirements of the statute cited by the trial court did not apply under the facts of this case. The trial court issued another letter opinion addressing this motion. The court adhered to its ruling with regard to the statute but stated that its emphasis was on the failure of the Barnetts to offer proof of notorious, hostile, and exclusive possession, as well as their failure to submit evidence of any attempt to convert a permissive use into a claim of ownership. The court also noted that the Barnetts presented no proof that any of the Barnetts' predecessors in title considered the fence to be the boundary.

The Barnetts subsequently filed an additional motion requesting a new trial. They argued that the trial court's decision was contrary to the law of adverse possession and the law pertaining to the establishment of a boundary by acquiescence. The trial court entered an order denying the Barnetts' motion in its entirety, thereby rejecting the Barnetts' arguments with regard to both adverse possession and boundary by acquiescence. The Barnetts then filed a notice of appeal.

In the appeal that followed, we dismissed for the lack of a final order because the trial court had not disposed of Stafford's claim for damages. *Barnett v. Gomance,* 2009 Ark. App. 104, 2009 WL 401611 (unpublished). Following our dismissal, the trial court entered a final order from which the Barnetts bring the present appeal.

*Boundary by acquiescence*

The Barnetts argue that the long-term existence of the wire fence and the landowners' usage of their respective properties to the fence line established that the fence had become the boundary between the properties by acquiescence. Stafford

responds to this argument on the merits, but she also argues that this issue is not properly before us because it was not raised in the pleadings before trial. We discuss Stafford's preliminary issue first.

In their answer to Stafford's complaint alleging trespass, the Barnetts defended on the ground of adverse possession. In their post-trial brief, the Barnetts asserted the doctrine of boundary by acquiescence in addition to their claim of adverse possession. Stafford addressed the boundary-by-acquiescence claim in her post-trial brief without raising any objection that the issue had not been pled. Rule 15(b) of the Arkansas Rules of Civil Procedure allows for the amendment of the pleadings to conform to the evidence introduced at trial. The rule is liberal in its allowance of amendments to conform pleadings to proof and even contemplates an amendment after judgment. *Hope v. Hope,* 333 Ark. 324, 969 S.W.2d 633 (1998). Even if no amendment is made, it does not affect the trial of issues not raised in the pleadings, as permitting the introduction of proof on an issue not raised in the pleadings constitutes an implied consent to trial on that issue. *Id.* Here, the Barnetts both submitted evidence on the issue and presented their argument in a post-trial brief without objection from Stafford. Thus, we disagree with Stafford's contention that the issue was not properly raised, and we proceed to a discussion of this point.

A fence, by acquiescence, may become the accepted boundary even though it is contrary to the survey line. *Summers v. Dietsch,* 41 Ark.App. 52, 849 S.W.2d 3 (1993). When adjoining landowners occupy their respective premises up to the line they mutually recognize and acquiesce in as the boundary for a long period of time, they and their grantees are precluded from claiming that the boundary thus recognized and acquiesced in is not the true one, although it may not be. *Clark v. Casebier,* 92 Ark.App. 472, 215 S.W.3d 684 (2005). A boundary line by acquiescence is inferred from the landowners' conduct over many years so as to imply the existence of an agreement about the location of the boundary line. *Hedger Bros. Cement & Materials, Inc. v. Stump,* 69 Ark.App. 219, 10 S.W.3d 926 (2000). It is the agreement and acquiescence, not the fence itself, that controls. *Camp v. Liberatore,* 1 Ark.App. 300, 615 S.W.2d 401 (1981). The intention of the parties and the significance they attach to the fence, rather than its location or condition, is what is to be considered. *Id.* Neither a prior dispute about the boundary line, nor adverse usage up to a fence are required to establish a boundary by acquiescence. *Myers v. Yingling,* 372 Ark. 523, 279 S.W.3d 83 (2008).

We have noted that the mere existence of a fence, without evidence of mutual recognition, cannot sustain a finding of such a boundary. *Robertson v. Lees,* 87 Ark.App. 172, 189 S.W.3d 463 (2004). *See also Warren v. Collier,* 262 Ark. 656, 559 S.W.2d 927 (1978); *Fish v. Bush,* 253 Ark. 27, 484 S.W.2d 525 (1972); *Carney v. Barnes,* 235 Ark. 887, 363 S.W.2d 417 (1962). Also, the fact that a landowner puts a fence inside his boundary line does not mean that he is acquiescing in the fence as the boundary, thereby losing title to the strip on the other side. *Robertson, supra.* That occurs only if the neighbor takes possession and holds it for the requisite number of years. *Avington v. Newborn,* 271 Ark. 648, 609 S.W.2d 678 (Ark. App.1981); *Carney, supra.*

Because the location of a boundary is a disputed question of fact, we will affirm unless the trial court's finding is clearly against the preponderance of the

evidence. *Myers, supra.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite conviction that a mistake was committed. *Hedger Bros. Cement & Materials, supra.* Whether a boundary line by acquiescence exists is to be determined from the evidence in each individual case. *Boyette v. Vogelpohl,* 92 Ark.App. 436, 214 S.W.3d 874 (2005).

■ In the case at bar, there was positive testimony that the old fence was not considered the boundary line. The trial court accepted as convincing Keith Gomance's testimony that the fence was placed in its present location only as a matter of convenience and that all concerned understood that the fence was not the boundary line. The Barnetts presented no countervailing testimony to show that this understanding was not shared by their predecessors in title. In sum, the evidence shows no prior acquiescence or mutual recognition that the fence was the boundary separating the properties. Additionally, the Barnetts' own survey showed the location of the boundary line. Keith Gomance and Mr. Stafford also testified that Mr. Barnett knew that the fence was not the boundary. Although Mr. Barnett asserted that he considered the fence to be the boundary, this assertion was contradicted by his own survey and the testimony of Keith Gomance and Mr. Stafford. The trial court reconciled this conflict in the testimony in Stafford's favor. In our view, the trial court's decision on this issue is not clearly erroneous.

### Adverse possession

■ The trial court in this instance found that the Barnetts not only failed to meet their burden of proving the common-law elements of adverse possession but that they also failed to satisfy the require-

ments of Arkansas Code Annotated section 18–11–106 (Supp.2009), because they introduced no evidence that they had paid their *ad valorem* taxes. The Barnetts take issue with both findings.

■ To prove the common-law elements of adverse possession, the claimant must show that he has been in possession of the property continuously for more than seven years and that his possession has been visible, notorious, distinct, exclusive, hostile, and with the intent to hold against the true owner. *White River Levee Dist. v. Reidhar,* 76 Ark.App. 225, 61 S.W.3d 235 (2001). We also note that a claimant may "tack on" the adverse possession time of an immediate predecessor in title. *Id.* The Arkansas General Assembly amended the statutory requirements for proof of adverse possession in Act 776 of 1995, now codified at Arkansas Code Annotated section 18–11–106. *Schrader v. Schrader,* 81 Ark.App. 343, 101 S.W.3d 873 (2003). In order for a claimant to establish adverse possession under this law, the claimant must prove color of title and payment of *ad valorem* taxes, in addition to the common-law elements of adverse possession. *Jones v. Barger,* 67 Ark.App. 337, 1 S.W.3d 31 (1999). Equity cases are reviewed *de novo* on appeal. *Reidhar, supra.* We do not reverse the trial court's findings unless they are clearly erroneous. *Id.*

In *Schrader, supra,* we held that the amendment to Arkansas Code Annotated section 18–11–106 did not apply to landowners whose claims of adverse possession had vested prior to the enactment of the amendment. Consequently, the question here is whether the Barnetts' claim ripened prior to the amendment of the statute. We hold that it did not.

■ The Barnetts purchased their property in 1997. Therefore, in order for the Barnetts to avoid the application of the

1995 amendment, they were required to prove that their predecessors in title had adversely possessed the property prior to their ownership. As brought out in the previous point, the use and possession of the Barnetts' predecessors in title began with permission. However, if the original use and possession was permissive, it cannot become adverse until notice of the hostility of the possessor's holding has been brought home to the owner by actual notice or by a holding so open and notorious as to raise a presumption of notice equivalent to actual notice. *Mikel v. The Development Co.,* 269 Ark. 365, 602 S.W.2d 630 (1980). Such possession does not ripen into title by lapse of time, unless notice was in some way brought home to the true owner that the occupancy had changed from a permissive use for the convenience of the parties into a hostile use. *Avington, supra; Dial v. Armstrong,* 195 Ark. 621, 113 S.W.2d 503 (1938). Here, the Barnetts offered no evidence that any of the previous owners held the property so openly, notoriously, and with the necessary hostility as to give notice of an adverse claim.

We also observe that where the use begins with permission, the presumption is that his subsequent possession and that of those claiming under him is also permissive. *See Mikel, supra; Thomas v. Stobaugh,* 244 Ark. 787, 427 S.W.2d 170 (1968); *McWilliams v. Schmidt,* 76 Ark. App. 173, 61 S.W.3d 898 (2001). The Barnetts contend that this presumption applies only to family members in a chain of title and that they, as strangers, cannot be bound by the original arrangement. However, we do not read into the law any such limitation because the presumption has been applied in cases that do not involve family members. *See, e.g., Mikel, supra; Stobaugh, supra.*

Based on these authorities and the evidence, we conclude that the trial court's ruling that the Barnetts were required to comply with the statute and that they failed to submit evidence showing the payment of *ad valorem* taxes is not clearly erroneous. We note that the Barnetts sought to cure this deficiency in the evidence by attaching proof of payment as exhibits to their motion for a new trial. However, such evidence cannot be used as a basis for a new trial, because a motion for a new trial cannot be used to bring into the record that which does not otherwise appear in the record. *Slaton v. Slaton,* 330 Ark. 287, 956 S.W.2d 150 (1997); *Sharp County v. Northeast Ark. Planning and Consulting Co.,* 269 Ark. 336, 602 S.W.2d 627 (1980); *Stickels v. Heckel,* 2009 Ark. App. 829, 370 S.W.3d 857; *Whisnant v. Whisnant,* 68 Ark.App. 298, 6 S.W.3d 808 (1999). Thus, the Barnetts' belated attempt to place this evidence in the record was untimely and could not be considered by the trial court or this court on appeal.

We affirm the trial court's decision.

Affirmed.

HART and KINARD, JJ., agree.