

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CV-14-575

| | | |
|---|---|---|
| JAMES M. GUTHRIE | | **Opinion Delivered** February 18, 2015 |
| | APPELLANT | |
| | | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, TWELFTH DIVISION |
| V. | | [NO. 60CV97-6601] |
| VICKI P. GUTHRIE | | |
| | APPELLEE | HONORABLE ALICE S. GRAY, JUDGE |
| | | AFFIRMED AS MODIFIED |

**DAVID M. GLOVER, Judge**

Appellant James Guthrie appeals from an order of the Pulaski County Circuit Court requiring him to pay $508 per month in child support for his twenty-five-year-old disabled son, J.G. He also appeals from an order awarding $4,000 in attorney's fees to J.G.'s mother, appellee Vicki Guthrie. We modify James's monthly support obligation to $477 but otherwise affirm the circuit court's orders.

## I. *Background*

James and Vicki Guthrie were divorced in 1998, and Vicki received custody of the couple's three children. The oldest child, ten-year-old J.G., was described in the decree as having "special educational needs," for which the parties would share tutoring costs. The decree also noted that James was not "motivated to work full time" and that Vicki had earned over ninety percent of the family's income, paid the majority of household expenses, and

acted as the children's primary caretaker. The court imputed income to James based on his earning ability and investments, and ordered him to pay $738 per month in child support until each child reached the age of eighteen or completed high school.[1]

In 2006, J.G. became the first child to turn eighteen and graduate from high school. He suffered from autism at that point and needed constant supervision. Vicki became his legal guardian, and he continued to live at home with her.

After the last child turned eighteen in 2011, James continued to pay the full $738 in child support until March 2012, when he filed a motion to terminate his support obligation. His motion cited the fact that all three children had reached their majority.

Vicki agreed that James should end support payments to the two youngest children. But she resisted termination of support to J.G., who was almost twenty-four years old and still living with her. Her May 2, 2012 response to James's motion stated that J.G. was "autistic and functions at the level of a five-year old child, requiring constant care and supervision at all times." She asked that James be required to "contribute to the care and maintenance of [J.G.]" and "to continue to assist" with J.G.'s care.

The court conducted hearings and received trial briefs on various issues surrounding James's request to terminate J.G.'s support. During the hearings, Vicki testified that J.G. was unable to care for himself and that she, along with paid caregivers, looked after him. She said that J.G. received a monthly Social Security payment of $710, qualified for Medicaid, and was

---

[1]The child-support chart in effect at the time designated $738 as the monthly support amount for three children, given James's monthly income. *In re Admin. Order No. 10: Ark. Child Support Guidelines*, 331 Ark. App'x 581, 590 (1998).

the beneficiary of an irrevocable special-needs trust that carried a balance of $19,000.[2] She attributed well over $2,000 in monthly expenses to J.G.'s care and stated that she did not have the financial resources to continue that care without James's help.

James testified that he was financially able to support J.G. but wanted relief from the legal obligation to do so. He said that his income consisted of Social Security retirement benefits, plus dividends from approximately $450,000 in investments. He also told the court that he had owned a sailboat and been a member of a Gulf Coast yacht club; that he had lived on the sailboat, although he also owned another home; that he received $28,000 in insurance proceeds when the sailboat was destroyed in a hurricane; and that he had no debt. He agreed that J.G. was unable to live independently and required constant supervision, and he acknowledged that J.G. was unwelcome in his home for those reasons.

Following the hearings, the court ruled that, due to J.G.'s disability, James's support obligation did not cease when J.G. reached his majority. The court ordered James to continue his support payments to J.G. and calculated James's monthly income for support purposes as $2,107.01. The court then referenced a support-chart figure of $467 and deviated upward to $508 as the monthly support owed. The support obligation was made retroactive to May 2, 2012 (the date that Vicki responded to James's motion to terminate support), and James was directed to make the support payments to Vicki as the trustee of J.G.'s special-needs trust. In a separate order, the court awarded Vicki $4,000 in attorney's fees. James filed timely notices of appeal from both orders.

---

[2]The trust was established by J.G.'s paternal grandfather.



II. *Automatic Termination of Child Support*

James argues first that his support obligation automatically terminated when J.G. turned eighteen and graduated from high school. He cites Arkansas Code Annotated section 9-14-237 (Repl. 2009), which provides in pertinent part:

> (a)(1) Unless a court order for child support specifically extends child support after these circumstances, an obligor's duty to pay child support for a child shall automatically terminate by operation of law:
>
> (A)(i) When the child reaches eighteen (18) years of age, unless the child is still attending high school;
>
> (ii) If the child is still attending high school, upon the child's high school graduation or the end of the school year after the child reaches nineteen (19) years of age, whichever is earlier.

According to James, the automatic-termination provision of section 9-14-237 took effect when J.G. reached his majority and, in the absence of a prior motion for extension, ended his support obligation. We disagree.

A parent ordinarily has no legal obligation to support a child beyond age eighteen. However, a parent may have a duty to provide continuing support to a child who is disabled upon reaching his majority. *See Elkins v. Elkins*, 262 Ark. 63, 553 S.W.2d 34 (1977); *Petty v. Petty*, 252 Ark. 1032, 482 S.W.2d 119 (1972). Our supreme court recognized in *Petty* that the onus of supporting the disabled child should not be borne solely by one parent.

The common-law duty to support a disabled adult child, set forth in *Petty* and *Elkins*, was not included in section 9-14-237 when the legislature enacted that statute in 1993. The statute's automatic-termination provision made no exception for disabled children. Nevertheless, since 1993, our courts have continued to recognize a parent's ongoing duty to

support a disabled adult child. *See Bagley v. Williamson*, 101 Ark. App. 1, 269 S.W.3d 837 (2007); *Davis v. Davis*, 79 Ark. App. 178, 84 S.W.3d 447 (2002); *Kimbrell v. Kimbrell*, 47 Ark. App. 56, 884 S.W.2d 268 (1994). In *Bagley*, we stated the following:

> Indeed, an obligor's duty to pay child support automatically terminates by operation of law on the later of the date that the child reaches eighteen years of age or should have graduated from high school. Ark. Code Ann. § 9-14-237 (Supp. 2005). However, the duty to support a child does not cease at majority *if* the child is mentally or physically disabled in any way at majority *and* needs support.

*Bagley*, 101 Ark. App. at 4, 269 S.W.3d at 840 (emphasis in original).

In light of these authorities, we conclude that section 9-14-237 sets forth the *general* rule that parental support automatically ceases when a child reaches the milestones that traditionally signal emancipation. However, the statute does not automatically terminate a parent's continuing, common-law duty to support a child who is disabled upon attaining his majority and who needs further support. *See Powell v. Miller*, 30 Ark. App. 157, 785 S.W.2d 37 (1990) (holding that a statute will not be construed as overruling a principle of common law unless it is made plain by the act that such a change in the established law is intended). Here, there is no dispute that J.G. was disabled upon reaching age eighteen and remained so at the time of the hearing.

We also observe that Arkansas Code Annotated section 9-12-312(a)(5)(B) (Repl. 2009), which was in effect when section 9-14-237 became law, specifies that a court may "provide for the continuation of support for an individual with a disability that affects the ability of the individual to live independently from the custodial parent." Section 9-12-312 provides that a court may determine support either initially "or upon review." Ark. Code

5



Ann. § 9–12–312(a)(3)(A)(Supp. 2013); *see also Davis, supra.* This statute therefore provides additional authority for a court to order continuing support to a child who is disabled upon reaching his majority.

James cites *Towery v. Towery*, 285 Ark. 113, 685 S.W.2d 155 (1985), for its holding that a court cannot reimpose a legal duty of child support once that duty has terminated. *Towery*, however, is distinguishable in that the child in that case was healthy upon reaching his majority but became disabled *after* turning eighteen. The *Towery* court held that, under those circumstances, the duty of parental support could not be revived. But the court was careful to note that the duty of support does not cease if the child is disabled *at majority*, as was the case here.

For these reasons, we affirm the circuit court's ruling that James's support obligation to J.G. did not automatically terminate when J.G. turned eighteen and graduated from high school.

### III. *Need for Support*

James argues alternatively that J.G. does not need support because his financial needs are met by Medicaid benefits, a special-needs trust with a balance of $19,000, and monthly Social Security payments in the amount of $710. The question of whether continued support is proper is based on the facts of each case. *Bagley, supra.* We will not reverse a court's ruling on this point absent an abuse of discretion. *Davis, supra.*

As a preliminary matter, James attacks the circuit court's failure to make a specific finding that J.G. needed support, but there is no reversible error. The court took evidence on



this issue and cited *Bagley*, *supra*, for its holding that a disabled adult child must demonstrate a need for support. We presume that the circuit court acted properly and made such findings of fact as were necessary to support its judgment. *Gerard v. Novak*, 2013 Ark. App. 743.

On the merits, James cites the monetary figures contained in Vicki's answers to interrogatories and other prehearing documents as proof that J.G.'s monthly expenses were adequately covered. However, during the hearings, the court asked Vicki to perform additional calculations, particularly with regard to the amount of living expenses attributable to J.G. After taking a recess to complete the calculations, Vicki testified that, if she were not caring for J.G., she would live in a smaller house and reduce her mortgage and utility payments by approximately $900 per month. She also attributed additional transportation costs to J.G., along with occasional expenditures for things such as repairs to items that J.G. had broken. She arrived at a monthly expense figure for J.G. of over $2,000 and stated that she did not have the financial resources to care for J.G. without James's help.

Given the amount of J.G.'s Social Security benefits, the relatively modest balance of his special-needs trust, and Vicki's testimony, we cannot say that the circuit court erred in ordering James to provide continuing support to J.G. While James argues that Vicki's calculations are suspect, we give due deference to the trial court to determine the credibility of witnesses. *Taku v. Hausman*, 2014 Ark. App. 615.

IV. *Modification of the Divorce Decree*

The divorce decree provided that James would pay support for the minor children "until each child reaches the age of eighteen (18) or completes high school, whichever occurs

last." J.G. turned eighteen and completed high school in 2006. However, a child-support order is subject to modification upon a showing that a material change in circumstances has occurred. *Maley v. Cauley*, 2010 Ark. App. 850, 378 S.W.3d 808. James argues that Vicki failed to prove a change of circumstances following entry of the original support order in the 1998 divorce decree.

The party seeking modification of a support award has the burden of showing a change in circumstances. *Hall v. Hall*, 2013 Ark. 330, 429 S.W.3d 219. When a noncustodial parent petitions the court to terminate support because the child has attained his majority, the burden shifts to the custodial parent to go forward with proof that support should be continued. *Harris v. Harris*, 82 Ark. App. 321, 107 S.W.3d 897 (2003). A circuit court's determination of changed circumstances is a finding of fact that will not be reversed unless it is clearly erroneous. *Baber v. Baber*, 2011 Ark. 40, 378 S.W.3d 699.

The court in this instance found that a material change of circumstances occurred based on the fact that J.G. was disabled upon reaching his majority and could not live independently. We see no clear error in the court's ruling. The 1998 divorce decree simply noted that ten-year-old J.G. had "special educational needs" that required tutoring. Vicki's testimony confirmed that J.G. was in regular classes at the time the decree was entered and took special-education classes only for speech and language therapy. She said that she could not have anticipated that her son would be unable to look after himself when he turned eighteen. On this evidence, the court may well have determined that a material change in circumstances occurred between the time that J.G. was ten years old and the time that he



became an adult.

## V. *Standing*

James argues that Vicki lacks standing to seek support for J.G. because she is not included in the list of persons set forth in Ark. Code Ann. § 9-14-105 (Repl. 2009), as those who may seek support on behalf of a minor child.

It is not clear to us that James argued the applicability of this statute below. An appellant is bound by the scope and nature of the argument he made at trial. *Chesapeake Exploration, LLC v. Whillock*, 2014 Ark. App. 55, 432 S.W.3d 61. In any event, the statute does not purport to apply to the unusual situation in which a parent seeks support payable during a disabled child's adulthood. Moreover, Vicki was J.G.'s custodian, his guardian, and the trustee of his special-needs trust. We therefore see no reversible error on the issue of standing.

## VI. *Special-Needs Trust*

James asserts that the circuit court erred in requiring him to make support payments to Vicki as the trustee of J.G.'s special-needs trust. A special-needs trust is a device allowed by the federal government to exempt certain assets from the resources that are counted to determine an individual's eligibility for government assistance. *In re Ruby G. Owen Trust*, 2012 Ark. App. 381, 418 S.W.3d 421. *See also* 42 U.S.C. § 1396p(d)(4)(A) (2010). According to the Social Security Program Operations Manual System (POMS), § SI 01120.200 G.1.d, child-support payments made directly to a trust/trustee as the result of a court order are not income to the recipient.

Citing *Gilbow v. Travis*, 2010 Ark. 9, 372 S.W.3d 319, James argues that Arkansas law prohibits payment of child support into an "interest-bearing" account. However, *Gilbow* is distinguishable because the support obligor in that case was ordered to pay a lump-sum arrearage into a trust account that he controlled. *Gilbow* did not involve periodic payments into an already-existing, special-needs trust that was created for the benefit and support of a disabled person. Further, payments into a special-needs trust are not merely for the "accumulation of capital," as James contends, citing *Smith v. Smith*, 341 Ark. 590, 19 S.W.3d 590 (2000). The trust is a government-sanctioned device that allows a disabled person to receive child-support payments without having them counted as income. *See In re Ruby G. Owen Trust, supra*. As such, the circuit court was well within its discretion to protect J.G.'s government benefits by ordering that child support be paid into the trust.

VII. *Computation of Income and Setting Child Support*

The circuit court set James's monthly income as $2,107.01 for support purposes. This consisted of James's monthly retirement income of $666; his monthly interest on investments of $812.58; and an imputed income of $628.43 per month, calculated as twenty hours per week at $7.25 an hour. James argues that the court erred in imputing income to him, given that he is sixty-six years old and retired.

Arkansas Supreme Court Administrative Order No. 10, § III(d) (2014), provides:

> If a payor is unemployed or working below full earning capacity, the court may consider the reasons therefor. If earnings are reduced as a matter of choice and not for reasonable cause, the court may attribute income to a payor up to his or her earning capacity, including consideration of the payor's life-style. Income of at least minimum wage shall be attributed to a payor ordered to pay child support.

SLIP OPINION

James contends that his decision to retire is reasonable and, therefore, no "earning capacity" income should be imputed to him. We review the court's imputation of income under the abuse-of-discretion standard. *Byrd v. Byrd*, 2012 Ark. App. 589. An abuse of discretion occurs when discretion is applied thoughtlessly, without due consideration, or improvidently. *Stevenson v. Stevenson*, 2011 Ark. App. 552.

A court may, in proper circumstances, impute income to a payor, but determining the proper circumstances "is sometimes difficult." *Grady v. Grady*, 295 Ark. 94, 98, 747 S.W.2d 77, 79 (1988). Our courts have voiced a reluctance to interfere with a payor's personal life and career choices. *See id.*; *Byrd*, *supra*. But, by the same token, we recognize that a payor's personal choices may have an impact on a custodial parent or a dependent child. Consequently, the payor's choices cannot always take precedence over his or her obligation to earn income sufficient to provide support.

In this case, it was not inherently unreasonable for James to retire at age sixty-six. However, he has a dependent child to support, and the child's other parent needs financial help. Given these circumstances, the circuit court did not thoughtlessly or improvidently impute income to James based on part-time, minimum-wage work.

James also argues that the circuit court erred in setting the amount of his monthly child support, specifically in deviating upward to $508 from the family support-chart amount of $467. There is a rebuttable presumption that the amount of child support listed in the family support chart is correct. Ark. Code Ann. § 9-12-312(a)(3)(B) (Supp. 2013). Only upon a written finding that the chart amount is unjust or inappropriate, as determined under

11

established criteria set forth in the chart, shall the presumption be rebutted. Ark. Code Ann. § 9-12-312(a)(3)(C) (Supp. 2013); Admin. Order No. 10, § I (2014). Section V of Administrative Order No. 10 sets out several deviation criteria, including "other income or assets available to support the child from whatever source, including the income of the custodial parent." Admin. Order No. 10, § V(a)(12) (2014). The list is not exclusive. *Stewart v. Winfrey*, 308 Ark. 277, 824 S.W.2d 373 (1992).

We begin by noting that the circuit court miscalculated the chart amount payable on a monthly income of $2,107.01. The correct amount is $436 rather than $467. *See* Admin. Order No. 10 (2014).[3] Using $436 as the correct chart amount, we turn to the issue of whether an upward deviation from that amount is proper.

As grounds for the upward deviation, the court cited James's accustomed standard of living; the amounts he spent on recreation (including membership in a yacht club and ownership of a sailboat); the insurance payments he received when the boat was destroyed; and the fact that he had investment accounts worth $459,000. We review a court's deviation from the support chart for an abuse of discretion. *Gilbow, supra.*

James argues that the court erred in deviating from the support chart because he lived on his sailboat and did not own it for recreational purposes. James did in fact testify that he lived on his sailboat. However, he acknowledged that he also had another, land-based home. The court therefore may not have given credence to his characterization of the sailboat as a residence. James argues further that the court should not have considered his investment

---

[3]The amount of $436 is also correct under the 2012 and 2013 charts.

accounts as a deviation factor because the court had already referenced those accounts to calculate his income. While it is true that the court considered the interest from James's investments in setting his income for support purposes, the court was also permitted to consider the assets themselves in deviating from the support chart. Admin. Order No. 10, § V(a)(12). Accordingly, we see no abuse of discretion in the circuit court's decision to deviate upward from the family support chart.

We therefore apply the amount of the court's upward deviation, $41, to the correct chart amount of $436, to reach $477 as the modified amount of James's monthly support obligation. In our de novo review of a fully developed equity case, we can enter the order that the trial court should have entered. *Frigon v. Frigon*, 89 Ark. App. 180, 201 S.W.3d 436 (2005).

VIII. *Retroactive Modification*

The court made James's support obligation retroactive to May 2, 2012, the date on which Vicki responded to James's motion to terminate child support. James argues that support can be imposed retroactively only from the date that a petition for modification is filed. *See Hill v. Hill*, 368 Ark. 200, 243 S.W.3d 886 (2006). However, he makes no convincing case that Vicki's May 2, 2012 response—in which she asked that James continue to assist with J.G.'s care—was insufficient to serve as a petition for modification.

James also argues that his child-support obligation terminated automatically by operation of law and, therefore, no new support obligation arose until the court's order was entered. His point is not well taken because, as explained earlier in this opinion, James's

13

support obligation did not automatically terminate by operation of law.

We therefore affirm on this point.

### IX. *Attorney's Fees*

James's final argument is that the circuit court erred by ordering him to pay Vicki $4,000 in attorney's fees. He does not challenge the amount of the award but instead argues that he has not violated the terms of the divorce decree. A trial court has the inherent power and discretion to award attorney's fees in a domestic-relations matter. *Webb v. Webb*, 2014 Ark. App. 697, ___ S.W.3d ___. There is no indication in this case that the court made the fee award as a response to contumacious behavior.

James also argues that Vicki "waited more than seven years" after his support obligation had terminated to seek a continuation of support. However, Vicki had no reason to act earlier because James continued to pay support for J.G. during those seven years. Further, James admittedly has the financial ability to support his son, and he enjoys a life with considerable assets and no debts. A court can consider the parties' financial abilities in deciding whether to award attorney's fees. *Id.*

Based on the foregoing, the court did not abuse its discretion in the attorney-fee award.

Affirmed as modified.

ABRAMSON and HARRISON, JJ., agree.

*Dover Dixon Horne PLLC*, by: *W. Michael Reif* and *Carl F. "Trey" Cooper III*, for appellant.

*The Brad Hendricks Law Firm*, by: *Caroline C. Lewis*, for appellee.