
SLIP OPINION

# ARKANSAS COURT OF APPEALS

DIVISION II
**No.** CV-16-210

|  |  |  |
|---|---|---|
| | | **Opinion Delivered**  October 26, 2016 |
| WILLIAM E. VICE | | APPEAL FROM THE WASHINGTON |
| | APPELLANT | COUNTY CIRCUIT COURT |
| | | [NO. 72E-93-2000] |
| V. | | |
| | | HONORABLE DOUG MARTIN, |
| | | JUDGE |
| DEE ANNA VICE | | |
| | APPELLEE | AFFIRMED |

## LARRY D. VAUGHT, Judge

Appellant William Vice appeals from an order of the Washington County Circuit Court (1) dismissing his claim for a credit for the overpayment of child support for his twenty-five-year-old daughter, Julia, and (2) requiring him to pay $62.00 per week in child support for his thirty-one-year-old disabled daughter, Lisa. He also appeals from a judgment awarding $2,694.70 in attorney's fees and costs to Julia and Lisa's mother, appellee Dee Anna Vice. We affirm the trial court's order and judgment.

William and Dee Anna divorced in 1994. The divorce decree ordered William to pay child support to Dee Anna for the benefit of Lisa, who was born with disabilities, and Julia. In 2007, an agreed order was entered whereby William agreed to pay child support in the amount of $122 per week for the parties' minor child, Julia, and the postminority support of Lisa due to her special needs. William paid child support accordingly.

SLIP OPINION

In May 2014, William filed a petition for termination of child support, alleging that Julia had reached the age of majority and that his child-support obligation for her had ceased. He also alleged that child support for Lisa should be terminated because in February 2014 he had begun to receive Social Security retirement benefits, and as a result, Lisa received Social Security dependent benefits on his record in excess of his child-support obligation. Dee Anna agreed that Julia had reached the age of majority; however, Dee Anna denied that William's support for Lisa should be terminated.

At the hearing, William contended that he had continued to pay his child-support obligation for Julia well beyond the date she reached the age of majority; therefore, that obligation should be terminated. He also testified that he was no longer able to work full-time due to multiple medical conditions.[1] He said that he was able to work only part-time, earning $3,000 per year. He stated that he did not believe that there was any job he could do given his physical condition and that he had not looked for other work. While he testified that he had been denied Social Security disability benefits, he stated that as of February 2014 he had begun to receive $909 in monthly Social Security retirement benefits. He agreed that Lisa has severe disabilities and needs care, but he claimed his child support for her should be terminated because she was receiving $553 per month in Social Security dependent benefits on his record, which was greater than his child-support obligation. He requested that his monthly child-support obligation be credited by $553.

---

[1]William testified that he suffers from type II diabetes, neuropathy in his feet, a blood disorder, high cholesterol, a rapid heartbeat, high blood pressure, and shoulder and back issues; that he has had three hernia surgeries, an aneurysm repair in his aorta, and knee surgery; and that he has only one kidney that functions at forty percent.

Dee Anna testified that Lisa was born with spondyloepiphyseal dysplasia congenital.[2] Lisa is also hearing impaired and cognitively and developmentally delayed. She has had multiple surgeries (including five spinal surgeries and one hip replacement) and therapies. According to Dee Anna, Lisa needs care and cannot be left unattended for extended periods of time. Dee Anna stated that she worked full time as a special-education teacher and that while she was at work she hired caregivers to stay with Lisa. Dee Anna further testified that she suffers from several health problems, including breast cancer and congestive heart failure.

Dee Anna stated that before William received Social Security retirement benefits, Lisa received $721 per month in Social Security benefits based on her disability. When William began to receive Social Security retirement, Lisa's monthly disability benefit increased to $772. Dee Anna attributed $1,260 in monthly expenses to Lisa's care. She testified that if William did not pay child support, the $772 per month Lisa received from Social Security would be insufficient to care for her and that she (Dee Anna) did not have the financial resources to cover the difference.

Syard Evans, the deputy CEO of the Arkansas Support Network, testified that he had been acquainted with Dee Anna and Lisa for fourteen years. He confirmed that Lisa's disability affected her physical, cognitive, intellectual, and psychological functioning. He testified that $772 per month was insufficient to support Lisa's needs.

Following the hearing, the trial court entered a letter opinion dismissing William's request for a credit for the overpayment of child-support payments for Julia because he failed

---

[2]Spondyloepiphyseal dysplasia congenital is an inherited bone-growth disorder that results in short stature (dwarfism), skeletal abnormalities, and problems with vision and hearing.

to plead it. The court did, however, find that William's child-support obligation for Julia terminated as a matter of law. Relying on *Guthrie v. Guthrie*, 2015 Ark. App. 108, 455 S.W.3d 839, the court next found that Lisa, based on her disability, needed support; that Dee Anna needed financial support to care for Lisa; and that William owed a duty to continue to support Lisa. Despite William's testimony that he was no longer able to work full time, the court, pursuant to Administrative Order No. 10, imputed income of full-time minimum wage to him and ordered him to pay chart support of $62 per week for Lisa.

In a supplemental letter opinion, the trial court found that based on *Arkansas Child Support Enforcement v. Hearst*, 2009 Ark. 599, 357 S.W.3d 450, it was not permitted to consider William's "Social Security Income (SSI) benefits" as income.[3] It reiterated that William's testimony that he was unable to work lacked credibility, it found that he was working below full earning capacity, it imputed a minimum-wage income to him for purposes of child support, and it again awarded a support-chart figure of $62 per week.

An order was entered on November 10, 2015, detailing the findings in the trial court's letter opinions. On December 1, 2015, the court entered a judgment awarding Dee Anna attorney's fees and costs in the amount of $2,694.70. This appeal followed.

William's first point on appeal is that the trial court erred in denying his request for a credit for the overpayment of Julia's child support. He claims that his obligation to support Julia terminated by operation of law, pursuant to Arkansas Code Annotated section 9-14-237,

---

[3]On appeal, both parties point out that the trial court mistakenly characterized William's Social Security retirement benefit as SSI. Dee Anna goes further in her brief, stating that the trial court was "entitled" to count William's retirement benefit as income pursuant to Administrative Order No. 10(II)(a). However, she did not file a cross-appeal on this issue.

when she reached the age of majority, and that he should receive a credit for all payments he made thereafter. However, the trial court did not reach the merits of this argument, finding that he failed to plead it. William does not address this finding on appeal.

A review of the record reveals that the trial court did not abuse its discretion in finding that the credit for the overpayment was not properly pled or litigated. William did not file a pleading requesting a credit for the overpayment of Julia's child support. William's first request, written or otherwise, for a credit was included in a brief filed the date of the hearing. Written pleadings are required so that each party may know what issues are to be tried and may thus be in a position to enter the trial with his proof in readiness. *Urban Renewal Agency of City of Harrison v. Hefley*, 237 Ark. 39, 40, 371 S.W.2d 141, 142 (1963) (citing *Bachus v. Bachus*, 216 Ark. 802, 227 S.W.2d 439 (1950)).

We recognize that Rule 15(b) of the Arkansas Rules of Civil Procedure allows for the amendment of the pleadings to conform to the evidence introduced at trial. *Barnett v. Gomance*, 2010 Ark. App. 109, at 6, 377 S.W.3d 317, 322. The rule is liberal in its allowance of amendments to conform pleadings to proof and even contemplates an amendment after judgment. *Id.*, 377 S.W.3d at 322. In this case, however, William did not move to amend the pleadings to conform to the evidence.

Finally, if no amendment is made, it does not affect the trial of issues not raised in the pleadings, as permitting the introduction of proof on an issue not raised in the pleadings constitutes an implied consent to trial on that issue. *Id.*, 377 S.W.3d at 322. However, the evidence in this case demonstrates that the parties did not impliedly consent to the issue of a credit for the overpayment of Julia's child support. William testified only that he had paid child

support beyond Julia's eighteenth birthday. His testimony did not include a request for a credit for the overpayment, and his attorney did not request a credit in closing arguments. No witness testified about the date on which Julia graduated from high school or reached the age of majority. There was no evidence establishing the amount of the overpayment. Because William did not file a pleading requesting the credit for the overpayment of Julia's support, he did not move to amend the pleadings to conform to the evidence, and there is no evidence that the parties impliedly consented to the issue, we hold that the trial court did not abuse its discretion in finding that the credit for the overpayment was not properly pled or litigated.

William's second point on appeal is that the trial court erred in computing his child-support payments. The trial court, relying on *Guthrie* and Administrative Order No. 10(III)(d),[4] imputed a full-time minimum-wage income to him and ordered him to pay chart support of $62 per week for Lisa. William argues that the trial court erred in imputing income to him because the evidence was uncontroverted that he is unable to work full-time due to his failing health.

We review the court's imputation of income under the abuse-of-discretion standard. *Guthrie*, 2015 Ark. App. 108, at 11, 455 S.W.3d at 846. An abuse of discretion occurs when discretion is applied thoughtlessly, without due consideration, or improvidently. *Id.*, 455 S.W.3d at 846.

---

[4]Arkansas Supreme Court Administrative Order No. 10(III)(d) (2015) provides:

If a payor is unemployed or working below full earning capacity, the court may consider the reasons therefor. If earnings are reduced as a matter of choice and not for reasonable cause, the court may attribute income to a payor up to his or her earning capacity, including consideration of the payor's life-style. Income of at least minimum wage shall be attributed to a payor ordered to pay child support.

In *Guthrie*, the trial court imputed income to a sixty-six-year-old retired noncustodial parent of a special-needs child who needed postminority care and found that the custodial parent needed financial support to provide that care. We stated that a court may, in proper circumstances, impute income to a payor, but determining the proper circumstances "is sometimes difficult." *Id.*, 455 S.W.3d at 846 (citing *Grady v. Grady*, 295 Ark. 94, 98, 747 S.W.2d 77, 79 (1988)). We further stated that our courts have voiced a reluctance to interfere with a payor's personal life and career choices. *Id.*, 455 S.W.3d at 846–47 (citing *Grady*, *supra*). But, by the same token, we recognized that a payor's personal choices may have an impact on a custodial parent or a dependent child. *Id.*, 455 S.W.3d at 847. We held that consequently the payor's choices cannot always take precedence over his or her obligation to earn income sufficient to provide support. *Id.*, 455 S.W.3d at 847.

Based on *Guthrie*, we affirm the trial court's imputation of income to William. It is undisputed that Lisa is disabled and requires care past the age of minority. There was evidence that Dee Anna, who was working full time, required additional financial support to provide care for Lisa. Although there was evidence that William retired because he was no longer able to work full time based on his medical conditions, that evidence came from William, and the trial court did not find his testimony credible. The court stated, "No proof beyond the defendant's testimony was offered to support his claims as to any of the alleged ailments." The court further noted that William had been denied Social Security disability benefits and that he had not looked for any work. Therefore, we hold that the trial court did not abuse its discretion in finding that William was working below full earning capacity and in imputing full-

SLIP OPINION

time minimum-wage income to him pursuant to *Guthrie* and Administrative Order No. 10(III)(d).

Under this same point on appeal, William argues that the trial court erred in refusing to credit his child-support obligation with the $553 in monthly Social Security benefits Lisa received on his record. He relies on *Cash v. Cash*, 234 Ark. 603, 353 S.W.2d 348 (1962), where our supreme court reversed the trial court's order refusing to allow a sixty-five-year-old noncustodial parent a credit on his child-support obligation for the Social Security retirement benefits his minor child received. William's reliance on *Cash* is premature.

Before William can be considered to receive a credit against his child-support obligation for the Social Security retirement benefits that Lisa receives based on his record, those benefits must first be counted in his income. In *Szabo v. Womack*, 2011 Ark. App. 664, *abrogated on other grounds by Szabo v. Womack*, 2013 Ark. App. 198, we held that a noncustodial parent was entitled to a credit against his child-support obligation for the Social Security disability benefits his dependent minor received *after* we held that these benefits were considered income to the noncustodial parent. *See also Ark. Office of Child Support Enf't v. Hearst*, 2009 Ark. 599, at 9–10, 357 S.W.3d 450, 455–56 (holding that Social Security disability benefits paid to dependent children of a noncustodial parent based on the noncustodial parent's disability are considered income to that parent for the purpose of calculating child support). Significantly, in *Szabo*, the noncustodial parent's first point on appeal was that the Social Security disability benefits should have been counted in his income. *Szabo*, 2011 Ark. App. 664, at 3.

In the case at bar, William never argued that the Social Security benefit of $553 per month that Lisa receives on his record is income to him for purposes of calculating his child support. He did not list the $553 as income in his affidavit of financial means, and he did not argue to the trial court in his pleadings, briefs, or at the hearing that these benefits were income to him. On appeal, William has not argued or even mentioned that these benefits should have been counted as his income. Because William did not list Lisa's $553 monthly Social Security benefit as income, never argued that it should have been included in calculations of his income, and it was not included in the trial court's child-support-income computation, we hold that he cannot now claim a credit for it against his child-support obligation.[5] Accordingly, we hold that the trial court did not abuse its discretion in denying William's request for the credit against the child support he pays on Lisa's behalf. We affirm on this point.

For his third and final point on appeal, William argues that the trial court abused its discretion in ordering him to pay Dee Anna $2,694.70 in attorney's fees. He contends that the trial court lacked statutory authority to award attorney's fees and that the trial court failed to consider the factors set forth in *Chrisco v. Sun Industries, Inc.*, 304 Ark. 227, 800 S.W.2d 717 (1990), justifying the award. We disagree.

As a general rule, attorney's fees are not allowed in the absence of a statute permitting their allowance. *Artman v. Hoy*, 370 Ark. 131, 137, 257 S.W.3d 864, 869 (2007). However, the

---

[5]Moreover, the benefits credited in *Szabo* and in *Hearst* were Social Security disability benefits paid to the dependent minor child based on the disability of the noncustodial parent. Here, the benefits attributable to William are Social Security retirement benefits. On the basis of her own disability, Lisa, an adult, was receiving Social Security benefits before William retired. When William retired, the government offset Lisa's disability benefits with his retirement benefits to his disabled/dependent child. Whether the law treats these benefits identically to those in *Szabo* and *Hearst* was not argued and is not before us.

trial court has an inherent power to award attorney's fees in domestic-relations proceedings, "and whether the trial judge should award fees and the amount thereof are matters within the discretion of the trial court." *Id.* at 137, 257 S.W.3d at 869. Therefore, no statutory authority is required in this case. Further, an analysis of the *Chrisco* factors when considering attorney's fees applications is no longer required in domestic-relations cases. *Tiner v. Tiner*, 2012 Ark. App. 483, at 16–17, 422 S.W.3d 178, 187. Due to the trial court's intimate acquaintance with the record and the quality of services rendered, we usually recognize the superior perspective of the trial court in assessing the applicable factors. *Fallin v. Fallin*, 2016 Ark. App. 179, at 15, 492 S.W.3d 525, 534.

In the case at bar, the trial court was acquainted with the record, presided over the hearing, reviewed the parties' pleadings and briefs, and considered the evidence and arguments (including the motion for attorney's fees and affidavit in support thereof); therefore, the court was in the best position to make a determination on the issue of attorney's fees. A trial court's decision related to attorney's fees will not be disturbed on appeal absent an abuse of discretion. *Artman*, 370 Ark. at 137, 257 S.W.3d at 869. We conclude that the trial court did not abuse its discretion in awarding Dee Anna $2,694.70 in attorney's fees and costs.

Affirmed.

KINARD and GRUBER, JJ., agree.

*Canova Law Firm*, by: *Adell Ralston*, for appellant.

*Davis, Clark, Butt, Carithers & Taylor, PLC*, by: *Constance G. Clark*, for appellee.